80 A.3d 453

COMMONWEALTH of Pennsylvania, Appellant

v.

Shonda SPRUILL, Appellee.

Supreme Court of Pennsylvania.

Submitted Feb. 15, 2012.

Decided Nov. 22, 2013.

Hugh J. Burns Jr., Esq., Philadelphia District Attorney's Office, for Commonwealth of Pennsylvania.

Karl Baker, Esq., Mark Patrick Cichowicz, Esq., Defender Association of Philadelphia, for Shonda Spruill.

CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, and STEVENS, JJ.

## *OPINION*

Chief Justice CASTILLE [1].

This appeal by the Commonwealth presents an issue concerning the proper scope of the "illegal sentence" doctrine,

---

1. This matter was reassigned to this author.

which allows for review of otherwise defaulted claims. The Superior Court held that the claim at issue, which concerned the propriety of appellee's conviction for the offense of aggravated assault, implicated the legality of appellee's sentence; found that the claim was meritorious; vacated appellee's aggravated assault conviction; and then directed that the principle of double jeopardy precluded appellee from being recharged in connection with the assault. Our review here is limited to the legal question of whether the claim is subject to waiver. For the reasons set forth below, we find that appellee's claim concerning her underlying conviction for aggravated assault does not implicate the legality of the sentence for purposes of issue preservation. Accordingly, we vacate the order of the Superior Court and we remand to that court for consideration of appellee's remaining appellate claims, consistent with this Opinion.

On October 1, 2007, appellee Shonda Spruill attended a funeral service in Philadelphia. Also attending the funeral were Derrell Hawkins ("Derrell") and her daughters, Shamira Deans ("Shamira") and Shadora Deans ("Shadora"). Shamira was approximately five months pregnant. The father of Shamira's unborn child was also the father of a child of appellee. After the funeral service ended, appellee and ten other women accosted Derrell, Shamira and Shadora. Appellee began screaming at Shamira that she was going to kill Shamira's baby. The group of assailants attacked Derrell, Shamira and Shadora, macing the victims as well as punching and kicking them. Shamira was repeatedly kicked in the stomach during the assault. The assault lasted for approximately ten minutes until the pastor and other church staff were able to intercede and remove the victims.[2]

Appellee was charged with the aggravated assault of Derrell, Shamira, and Shadora as well as related crimes. Count 1 in each of the bills of information lodged against appellee set forth the aggravated assault charge, as follows:

2. At the sentencing hearing, Derrell testified that Shamira delivered a stillborn baby approximately two months after the assault. N.T., 10/07/2008, at 18–19.

302

COUNT 1: Aggravated Assault—(F1)

Offense Date: 10/1/2007 18 [Pa.C.S.] § 2702 §§ A

Attempted to cause serious bodily injury to another, or caused such injury intentionally, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life; and/or attempted to cause, or intentionally, knowingly, or recklessly did cause bodily/serious bodily injury with a deadly weapon.

Informations filed 11/06/2007.

Although the aggravated assault charges were denominated as "F1"s—*i.e.*, first-degree felonies—the descriptions in the bills of information encompassed the elements of both F1 aggravated assault and second-degree felony ("F2") aggravated assault. F1 aggravated assault is established when an actor "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S. § 2702(a)(1).[3] The less serious offense of F2 aggravated assault is established when an actor "attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon." 18 Pa.C.S. § 2702(a)(4).[4]

Appellee was tried nonjury before the Honorable Linda A. Carpenter. On May 19, 2008, the trial court found appellee guilty of F2 aggravated assault, conspiracy to commit aggravated assault, simple assault, possession of an instrument of crime, recklessly endangering another person, and terroristic threats with respect to the attack on Derrell. With respect to Shamira and Shadora, the trial court found appellee not guilty

3. An F1 aggravated assault may also be established when the defendant causes serious bodily injury to an individual in specifically listed classes of people. *See* 18 Pa.C.S. § 2702(a)(2). Those 38 classes of people, which include police officers and firefighters, are set forth in Section 2702(c). Those provisions are not at issue in this case.

4. There are four other types of F2 aggravated assault. *See* 18 Pa.C.S. § 2702(a)(3), (a)(5), (a)(6), and (a)(7). All of those other types of F2 aggravated assault relate to crimes committed against a member of the classes of people listed in Section 2702(c). Those provisions are not at issue in this case.

of aggravated assault, but guilty of simple assault and related crimes. Appellee did not raise an objection to the aggravated assault verdict premised upon the grading of the conviction as an F2.

Over four months later, on October 7, 2008, appellee was sentenced to an aggregate term of 6 to 23 months' house arrest to be followed by five years' probation for the crimes against Derrell. With respect to the remaining convictions for the assaults upon Shamira and Shadora, the trial court imposed concurrent sentences of 6 to 23 months' house arrest to be followed by two years' probation. Again, appellee did not object to the aggravated assault conviction premised upon its grading as an F2.

Appellee filed a notice of appeal, followed by a statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellee raised five issues in her Rule 1925(b) statement, the first of which challenged the sufficiency of the evidence to support the aggravated assault conviction as an F2, and the second of which is the underlying subject of this appeal:

> The court erred in finding the defendant guilty of aggravated assault as an F2 when the Commonwealth specifically did not prosecute the defendant for aggravated assault as an F2, but rather prosecuted defendant for aggravated assault as an F1 and when the charge of aggravated assault as an F2 of which defendant was found guilty was not a lesser[-]included offense of aggravated assault F1, the charge on which the Commonwealth was proceeding; likewise, the court erred in finding the defendant guilty of conspiracy to commit aggravated assault as a[n] F2.

*See* Tr. ct. slip op at 2–3.[5]

In its Rule 1925 opinion, the trial court addressed the sufficiency of the evidence by noting that the evidence showed that appellee and her ten cohorts repeatedly punched and kicked Derrell after appellee had used mace to render Derrell

---

5. Appellee's remaining three issues posed questions concerning merger of sentences.

defenseless. The trial court concluded that appellee had "used the mace in such a manner that it became a device which was likely to produce serious bodily injury," and that appellee's use of the mace satisfied the "deadly weapon element" of F2 aggravated assault. *Id.* at 7.[6]

The trial court then turned to appellee's claim that her F2 aggravated assault conviction should be vacated because she was prosecuted only for F1 aggravated assault, and F2 aggravated assault is not a lesser-included offense of F1 aggravated assault. The trial court found that F2 aggravated assault "is indeed" a lesser-included offense. In so concluding, however, the trial court did not examine and compare the elements of the two offenses. *See* 42 Pa.C.S. § 9765 ("No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense."); *see also Commonwealth v. Baldwin,* 604 Pa. 34, 985 A.2d 830 (2009). Instead, the court simply quoted the bills which, as explained above, set forth the elements of aggravated assault as both an F1 and an F2. Tr. ct. slip op. at 8. Thus, the court's actual analysis appeared to focus on the first part of appellee's argument, concerning whether appellee was prosecuted for F2 aggravated assault, and not upon the lesser-included offense issue. While not clearly stated, the trial court apparently concluded that appellee was on notice that she was charged with F2 aggravated assault, and thus the conviction for that crime should be sustained.

On appeal to the Superior Court, appellee modified this claim, which the panel then deemed to be dispositive. Appellee no longer claimed that she had never been charged with F2 aggravated assault, but instead asserted that, after filing the information, the Commonwealth abandoned the F2 charge. The Commonwealth countered that appellee had waived that

6. In its analysis, the trial court employed "serious bodily injury" language, which is a required element of F1 aggravated assault, but not of F2 aggravated assault, as well as references to the use of a "deadly weapon," which is an element of F2 aggravated assault but not of F1 aggravated assault.

issue by failing to object before the trial court and, in any event, it had not abandoned the F2 charge.

In an unpublished memorandum decision, a Superior Court panel summarily rejected the Commonwealth's waiver argument, finding that "a claim that the trial court improperly imposed a sentence on an offense lower than the offense charged in the criminal information goes to the legality of the sentence, and thus cannot be waived." Super. Ct. slip op. at 3 (citing *Commonwealth v. Passarelli*, 789 A.2d 708, 713–14 (Pa.Super.2001),[7] and *Commonwealth v. Coto*, 932 A.2d 933, 935 (Pa.Super.2007)). The panel employed a "But see" citation to a conflicting panel decision holding that such claims are waivable, *Commonwealth v. Pellecchia*, 925 A.2d 848, 849 (Pa.Super.2007), with a parenthetical making apparent the conflict. *Id.* The panel did not explain why it preferred the non-waiver authority, nor did it explain why a resolution of the split in authority within the court was not advisable.

The panel then examined the merits of the claim, observing that appellee had conceded that the language in the informations charging aggravated assault was "expansive." *Id.* at 5. The court thus found that both F1 and F2 aggravated assault were encompassed in the information charging appellee for her attack on Derrell.

---

**7.** The Superior Court noted that the Pennsylvania Supreme Court had affirmed the Superior Court's *Passarelli* decision. Super. Ct. slip op. at 3 (citing *Commonwealth v. Passarelli*, 573 Pa. 372, 825 A.2d 628 (2003) (*per curiam* affirmance)).

The Court's *per curiam* affirmance in *Passarelli*, however, was unrelated to the legality of sentencing issue. The Court had granted allocatur in *Passarelli* limited to whether evidence of prior physical abuse of the victim was admissible against the defendant. *Commonwealth v. Passarelli*, 54 MAL 2002 (order dated 12/24/2002). Additionally, the Court's *per curiam* affirmance order in *Passarelli* did not affirm based upon the opinion of the Superior Court in *Passarelli*. Thus, the *per curiam* affirmance signaled only the Court's agreement with the Superior Court's final disposition, and not its reasoning. *See Commonwealth v. Tilghman*, 543 Pa. 578, 673 A.2d 898, 904 (1996) (unless the Court indicates that the opinion of the lower tribunal is affirmed *per curiam*, the Court's order is not to be interpreted as adopting the rationale employed by the lower tribunal in reaching its final disposition).

The panel next turned to appellee's argument that the Commonwealth had abandoned the F2 aggravated assault charge at trial. This was a fact-driven inquiry. The panel focused on two passages in the transcript, one involving a pre-trial discussion and another conducted during the defense closing argument. The pre-trial discussion involved the trial court asking: "The aggravated assault is an F–1?," to which defense counsel responded, "Right." *Id.* at 6 (quoting N.T., 5/19/2008, at 4–5). The prosecutor did not comment. The discussion during the defense closing proceeded as follows:

> THE COURT: [Addressing the prosecutor]: [A]re you saying that the mace in any way becomes relevant to the aggravated assault[?]
>
> [ADA]: Well, Your Honor—
>
> THE COURT: To make it an F–2?
>
> [ADA]: Well, I don't think the mace would rise to the level of—
>
> THE COURT: Okay.
>
> [ADA]: But in this case, I don't mean to step on [defense counsel's] toes, but this case is one you're looking at [sic] the **intent to cause serious bodily injury.**
>
> You can look at the totality of the circumstances. That would be my argument here.
>
> THE COURT: **So we're only going on an F–1?**
>
> [Defense counsel]: **Right. And it's only the attempt to cause serious bodily injury.**
>
> THE COURT: Okay.

Super. Ct. slip op. at 6–7 (quoting N.T., 5/19/2008, at 75–76) (emphasis supplied by Superior Court).

The panel found that these passages established that the Commonwealth had abandoned the F2 aggravated assault charge, and pursued only F1. The panel also rejected the Commonwealth's argument that the F2 conviction was a lesser-included offense of F1 aggravated assault.[8] The panel then

---

8. The Commonwealth argues that the F2 aggravated assault charge was indeed a lesser-included offense of F1 aggravated assault. Common-

vacated the conviction for F2 aggravated assault and, in a footnote, stated that principles of double jeopardy barred the Commonwealth from pursuing further charges premised upon this assault. Finally, the panel stated that since it had vacated the conviction, it would not address appellee's claim that the evidence was insufficient to support that conviction.[9]

Following denial of reargument, the Commonwealth sought further review in this Court, which was granted, but limited to the question of whether the claim upon which the panel granted relief was non-waivable because it implicated the legality of appellee's sentence. As this is a question of law, our scope of review is plenary and our standard of review is *de novo*. See *Commonwealth v. Janssen Pharmaceutica, Inc.*, 607 Pa. 406, 8 A.3d 267, 271 (2010).

The Commonwealth argues that appellee waived her claim that the F2 aggravated assault charge was withdrawn prior to the verdict by not raising that objection at trial, and further asserts that the Superior Court erroneously characterized the claim as one implicating the legality of the sentence so as to reach it. The Commonwealth acknowledges that a claim that truly challenges the legality of a sentence is not waivable. But, the Commonwealth observes, an "illegal sentence" claim concerns the **sentence,** not the validity of the underlying conviction, which is the essence of appellee's claim. Common-wealth's Brief at 13 (citing, *inter alia, Commonwealth v. Norris*, 498 Pa. 308, 446 A.2d 246, 252 n. 9 (1982), and *Commonwealth v. Walker*, 468 Pa. 323, 362 A.2d 227, 230 (1976)).

wealth's Brief at 9 n.5. The Commonwealth did not raise this argument in its Petition for Allowance of Appeal, and we did not grant review on this issue. Accordingly, we will not discuss it any further.

9. The panel also noted appellee's sentencing merger arguments, order-ing a remand due to the effect of its vacatur of the aggravated assault conviction. The merger issue is not before this Court; however, given our reversal of the panel's decision concerning the F2 aggravated assault, the panel obviously may need to revisit the sentencing issue; in addition, the panel's resolution of the sufficiency claim on remand may affect its determination of sentencing merger.

Sentencing illegality has been narrowly defined, the Commonwealth argues, and the doctrine should not be expanded to embrace appellee's belated challenge to whether the verdict of guilt for F2 aggravated assault was proper. The Commonwealth submits that "[t]reating claims that challenge the conviction as the equivalent of illegal sentencing claims undermines the very concept of issue preservation." Commonwealth's Brief at 18.

As further support for its argument that the gravamen of appellee's complaint attacked her conviction, and not her sentence, the Commonwealth notes that a conviction for F2 aggravated assault exposes a defendant to a maximum term of ten years' incarceration, but appellee received a house arrest sentence, with a maximum of 23 months, which was well below the statutory limit. Appellee's claim was not that her house arrest sentence was illegal, but that she should never have been convicted of F2 aggravated assault at trial, an event which preceded sentencing. The Commonwealth adds that the remedy fashioned by the Superior Court corroborates the error in the panel's finding that the sentence was illegal: in the Commonwealth's view, the panel incoherently eliminated the **conviction,** rather than vacating the **sentence.** The Commonwealth succinctly states that "[t]he remedy for an unlawful sentence is a lawful sentence, not an arrest of judgment." Commonwealth's Brief at 16.

Turning to the broader jurisprudential implications of the Superior Court's ruling, the Commonwealth asserts that sentencing legality claims are readily and objectively ascertainable; an initial layer of review by the trial court is not necessary to appellate court resolution. In contrast, attacks on the defendant's underlying conviction are often fact-driven, and they require input from the trial court to properly determine them. The Commonwealth contends that appellee's claim is plainly fact-driven: there was no explicit statement at trial from the prosecutor that the Commonwealth was withdrawing or abandoning the F2 aggravated assault charge. The Superior Court came to a contrary conclusion by examining a cold record, without the benefit of the views of the trial

court, which rendered the verdict on the allegedly withdrawn charge, and by cobbling together various statements and silences to arrive at a controlling deduction that the Commonwealth withdrew the charge. The Commonwealth asserts that the panel's reading of the record was selective, pointing out that, after closing arguments but before rendering a verdict, the trial court observed that the aggravated assault charge " 'can be charged as an F–2.' " Commonwealth's Brief at 20 (quoting N.T., 5/19/2008, at 84). The Commonwealth observes that this comment by the fact-finder shows that the F2 aggravated assault charge was still being pursued.[10]

Appellee, who opposed the Commonwealth's reargument petition below on the illegal sentencing issue and also opposed its efforts to secure review here, has altered her position again. In a short brief, appellee states that she now agrees "that the Superior Court erred in reviewing as a question of legality of sentence the defendant's claim that it was improper to convict the defendant of aggravated assault as [an F2] when the Commonwealth sought conviction for aggravated assault solely as [an F1]." Appellee's Brief at 6. Appellee thus agrees that we should reverse the Superior Court on the sentencing legality question accepted for review. However, appellee challenges the Commonwealth's argument in the Superior Court that she waived the underlying issue by failing to object at trial. (Appellee does not cite the place in the record where she supposedly preserved the claim at trial.) Appellee then notes that we accepted review only to consider the sentencing legality question, and the Superior Court should pass upon whether the claim in fact was waived at trial, in the first

10. The Commonwealth also discusses whether appellee's claim is a non-waivable challenge to the trial court's subject matter jurisdiction. *See* Commonwealth's Brief at 14–15 (discussing *Commonwealth v. Diaz,* 477 Pa. 122, 383 A.2d 852 (1978)). This line of argument apparently is a response to appellee's argument in her brief in opposition to the Petition for Allowance of Appeal. There, appellee had argued that regardless of whether her claim implicated the legality of sentence, the Superior Court's result was correct as the trial court lacked subject matter jurisdiction to render a guilty verdict on a count for which appellee was not on trial. We did not grant allocatur to review a subject matter jurisdiction claim, and thus we will not discuss this claim any further.

instance. Appellee thus requests that we remand to the Superior Court to determine whether she preserved this issue for review, and to pass upon her sufficiency of the evidence claim.

In its reply brief, the Commonwealth emphasizes that appellee has changed tack with her concession that her claim does not involve the legality of her sentence. The Commonwealth notes that appellee opposed reargument before the Superior Court, in a pleading where she "expressly disavowed and disparaged the relief she now belatedly seeks. Sanctioning her surprise backflip would reward the kind of practice this Court has always disapproved." Commonwealth's Reply Brief at 5. The Commonwealth argues that the doctrine of judicial estoppel requires that appellee not benefit from belatedly switching legal positions. Commonwealth's Reply Brief at 4 (citing, *inter alia*, *Sunbeam Corp. v. Liberty Mutual Ins. Co.*, 566 Pa. 494, 781 A.2d 1189, 1192–93 (2001); *Trowbridge v. Scranton Artificial Limb Co.*, 560 Pa. 640, 747 A.2d 862, 865 (2000); *In re Adoption of S.A.J.*, 575 Pa. 624, 838 A.2d 616, 621 (2003)). In response to appellee's claim that we should remand for the Superior Court to determine, in the first instance, whether appellee waived the claim at trial, the Commonwealth argues that the panel must have determined that the issue was waived because its discussion of sentencing legality otherwise was "pointless." The Commonwealth also asserts that appellee is not entitled to a remand for determination of her sufficiency claim, arguing that she could have secured that review if she had not opposed the Commonwealth's reargument request; and that she opposed the Commonwealth's anticipatory request, in its allocatur petition, to accept review of the sufficiency claim because it could be an alternative ground for affirmance. In the Commonwealth's view, the proper mandate here is a simple reversal.

■ Given the parties' agreement on the proper resolution of the legal issue accepted for review (albeit there is disagreement on appropriate mandate), a summary corrective decision could suffice to resolve the appeal. However, the parties' agreement on a legal issue does not control this Court's

independent judgment. *See, e.g., Commonwealth v. Bracey,* 604 Pa. 459, 986 A.2d 128, 146 n. 18 (2009); *Commonwealth v. Collins,* 564 Pa. 144, 764 A.2d 1056, 1058 n. 4 (2001); *accord Commonwealth v. Grant,* 572 Pa. 48, 813 A.2d 726 (2002) (adopting rule contrary to position shared by parties). In addition, we accepted this appeal to address the legal issue, it is an issue that has led to conflicting published authority in the Superior Court, and a summary decision without explanation would leave intact lower court decisions that, the parties apparently now agree, are problematic. And finally, we are not insensitive to the potentiality for manipulation when the party benefitting from a ruling below defended it upon reargument and in the allocatur process, and changed positions only after the matter was accepted for review here. *See Pap's A.M. v. City of Erie,* 571 Pa. 375, 812 A.2d 591, 600–01 (2002) (discussing potential for manipulation of mootness doctrine as case proceeds through various levels of appellate litigation). An independently reasoned decision is called for.

This Court's experience with claims allegedly implicating sentencing legality has not always been smooth. Complexities can arise from the fact that a sentencing legality claim can be offered for a variety of reasons, most commonly to overcome a failure to preserve a sentencing issue by contemporaneous objection at trial, *see* Pa.R.A.P. 302, or to secure review as of right on direct appeal without having to separately petition for allowance of review. *See* 42 Pa.C.S. § 9781. Complexities also arise from disagreement among the members of the Court concerning whether a particular claim implicates the legality of a sentence. Over the years, there has been consensus, or solid majority holdings, with respect to certain discrete claims. The classic instance of an illegal sentence is where the term imposed exceeds the statutory maximum, *see Commonwealth v. Shiffler,* 583 Pa. 478, 879 A.2d 185, 189 (2005), but there are numerous other instances as well. *See, e.g., Commonwealth v. Vasquez,* 560 Pa. 381, 744 A.2d 1280 (2000). The Superior Court, which addresses sentencing claims on a daily basis in its direct review capacity, has a developed line of decisional law on the question. *See Commonwealth v. Foster,* 609 Pa.

502, 17 A.3d 332, 342–44 (2011) (Opinion Announcing Judgment of Court by Baer, J.) (collecting cases).

Not infrequently, the more difficult cases may generate multiple expressions and even a failure to achieve consensus. For example, *Foster* generated a unanimous mandate (affording sentencing relief on a claim not raised below), but no majority expression of view, and four separate, nuanced opinions addressing preferred approaches to the "illegal sentence" question. The difficulty in *Foster* arose from the fact that the claim was premised upon new decisional law: *Commonwealth v. Dickson*, 591 Pa. 364, 918 A.2d 95 (2007), which held that a sentencing statute requiring a five-year mandatory sentence for certain offenses committed while visibly possessing a firearm, 42 Pa.C.S. § 9712(a), did not apply to unarmed co-conspirators. *Dickson* was decided after the defendant in *Foster* (an unarmed co-conspirator who was sentenced to the mandatory term under Superior Court authority overturned by *Dickson*) had already filed his notice of appeal. The defendant in *Foster* had not preserved a *Dickson*-style challenge to the mandatory sentence in the trial court. There was no question that the claim in *Foster* was a sentencing claim: the difficulty was whether that sentencing claim was reviewable, even though it was waived, and if so, why. The Court's consideration of these issues implicated (in various of the expressions of the Court) questions of whether the claim implicated the "legality" of the sentence under prior decisional law; if so, under what theory or test; and the roles of retroactivity and this Court's issue preservation doctrines.

In this case, the question is not whether a sentencing claim implicates the "legality" of the sentence, so as to negate issue preservation principles; rather, we have the more elemental question of whether the claim posed is a sentencing claim at all. We do not view that question to be close. The claim sustained by the Superior Court involved appellee's underlying conviction at trial, not the sentence the trial court imposed over four months later. Thus, the failure to forward a contemporaneous objection to the court's verdict cannot be

excused by resort to an "illegal sentence" doctrine.[11] Of course, every criminal defense claim on direct appeal, if successful, will result in some effect upon the "sentence," since it is the judgment of sentence that is the appealable order. But, that does not convert all claims into sentencing claims, much less into claims that a sentence was "illegal." For example, a sufficiency of the evidence claim, if successful, will result in a vacatur of sentence and outright acquittal; but, the Court has never held that such claims are non-waivable merely because of the relief involved.

There is force to the Commonwealth's additional arguments, proving that this claim concerns the conviction and not the sentence. For example, there is nothing on the face of the record suggesting a fatal problem with the sentence: the trial court delivered a guilty verdict of F2 aggravated assault, and the sentence imposed was within the statutory range for such an offense. To succeed, appellee needs to prove an error respecting the **verdict,** not the sentence Likewise, the Superior Court remedy here, as the Commonwealth notes, was not to order resentencing, as would happen where it is the sentence that is infirm, but to effectively arrest judgment, *i.e.,* to undo the underlying conviction.

There is also some force to the Commonwealth's argument that fact-driven matters are particularly ill-suited to characterization as implicating "sentencing illegality," at least where, as here, the claim depends upon particulars of the conviction. This Court recognized as much in *Commonwealth v. Andrews,* 564 Pa. 321, 768 A.2d 309 (2001). In that case, Andrews was convicted of, *inter alia,* two counts of conspiracy and two counts of possessing an instrument of crime ("PIC"). Andrews belatedly raised statutory and constitutional claims asserting that judgment should be arrested on one count of conspiracy and one count of PIC because the Commonwealth allegedly prosecuted the crimes as one continuing transaction.

11. For purposes of reviewing the Superior Court's illegal sentence holding, we will assume the claim was defaulted at trial. We will separately address, *infra,* the Commonwealth's claim, in its Reply Brief, that the panel decided that question.

Andrews asserted that his unpreserved claims should be reviewed as they implicated the legality of his sentence.

The *Andrews* Court noted that the question of whether single or multiple conspiracies exist has at times been viewed as raising a non-waivable challenge to the legality of sentence, and in other instances as a waivable challenge to the sufficiency of the evidence. The Court then focused on whether necessary fact finding was implicated by the analysis, since that factor would suggest that the claim was more in the nature of a sufficiency of the evidence claim, and thus was waivable. The *Andrews* Court then determined that the claim presented was fact-driven as the inquiry required examination of what Andrews did, and what he intended to do. The Court thus viewed the argument as being in the nature of a sufficiency of the evidence claim, rather than a non-waivable illegality of sentencing claim.[12]

Here, the proper evaluation of appellee's underlying claim depends upon what offenses were charged and pursued, and specifically whether the Commonwealth in fact affirmatively withdrew the F2 aggravated assault charge. The trial court, which sat as fact-finder, obviously believed that the charge had not been withdrawn, since it returned its verdict on that offense. In reaching a contrary conclusion, the Superior Court panel, without benefit of any analysis from the trial court, reached a definitive conclusion otherwise only by conducting its own examination of the record. Even if the challenge could be construed as implicating the sentence, this is not the sort of instance suggesting non-waivable "illegality."

We need not belabor the point: appellee rightly, if belatedly, concedes it, and the Commonwealth has noted multiple

---

12. The *Andrews* Court nevertheless addressed the claim given the prior precedent and because the Commonwealth had not asserted waiver.

The Court in *Commonwealth v. Baldwin*, 604 Pa. 34, 985 A.2d 830 (2009), stated that the question of whether a defendant's convictions merge for sentencing purposes implicates the legality of the sentence. *Baldwin* was a more typical sentencing merger case, which did not present the conspiracy nuance at issue in *Andrews*, and indeed *Baldwin* did not cite to nor discuss *Andrews*.

reasons why the "illegal sentence" analysis of the Superior Court is flawed.[13]

 We now turn to what remedy is appropriate, a point disputed by the parties. The Commonwealth opposes appellee's request that we remand for the Superior Court to consider whether she in fact failed to properly object to the Commonwealth's alleged withdrawal of the F2 charge, arguing that the claim indisputably was waived and that the panel must have rejected the claim, or it would not have proceeded to find the claim non-waivable. It is true that appellee has not indicated where in the record she preserved her claim; and it is true also that the trial court never addressed the claim in its

13. As noted in the text earlier, in concluding that appellee's issue concerning the Commonwealth's alleged withdrawal of the F2 charge related to the legality of sentencing, the panel below simply cited its panel decisions in *Commonwealth v. Coto*, 932 A.2d 933 (Pa.Super.2007), and *Commonwealth v. Passarelli*, 789 A.2d 708 (Pa.Super.2001), with accompanying parenthetical descriptions, while also citing a contrary panel decision *Commonwealth v. Pellecchia*, 925 A.2d 848 (Pa.Super.2007), and not addressing the apparent conflict.

The two decisions cited in support of the illegal sentence conclusion, *Coto* and *Passarelli*, in turn relied upon *Commonwealth v. Kisner*, 736 A.2d 672 (Pa.Super.1999). *Passarelli* relied directly on *Kisner; Coto* relied on cases which, in turn, led in a direct line back to *Kisner*. In *Kisner*, the information charged the appellant with attempted rape as an F2, and his jury waiver colloquy likewise described the crime as an F2, which carried a maximum sentence of ten years. Following the bench trial verdict of guilt, however, the trial court sentenced the appellant to six to twelve years of imprisonment, grading the crime as an F1, which is punishable by up to twenty years. In point of fact, attempted rape had been regraded by the General Assembly as an F1 the year before the appellant's trial, but the Commonwealth had inadvertently charged the crime as an F2.
Notably, *Kisner* does not contain a discussion of why the issue there was deemed to implicate sentencing legality. It appears that the question of legality was not contested by the Commonwealth perhaps because, as the *Kisner* panel noted, the mistake made by the trial court there (in the waiver colloquy) was traceable to the "understandable" error made by the Commonwealth in misgrading the crime as an F–2. In any event, the trial proceeded on the F2. In the present matter, the claim upon which the panel granted relief did not allege that the sentence imposed on appellee exceeded the legal maximum for the graded offense. *Kisner*, then, does not support the panel's finding that the non-sentencing claim here implicated sentencing legality.

opinion, which quoted appellee's statement of questions presented for appeal *verbatim,* a statement that does not appear to embrace the claim. On the other hand, this Court did not accept for review a question respecting the underlying waiver. Moreover, the panel's discussion of waiver below was exceedingly brief and conclusory, consisting of a declaration that the claim implicated illegal sentencing, without elaboration beyond citation to inconsistent and competing Superior Court decisional law. Although this manner of largely unexplained disposition below is not optimal, it is not apparent whether the panel passed upon the waiver question, or simply deemed it more expedient to deem the claim non-waivable. We trust that appellee will not pursue the non-waiver argument upon remand unless there is a good faith basis in the record for doing so.

The Commonwealth goes further and argues that we should simply reverse the order of the Superior Court. The Commonwealth submits that principles of judicial estoppel are implicated, and we should decline to remand, even for consideration of appellee's sufficiency claim, as a sanction for appellee's belated concession that the issue upon which she prevailed in fact did not implicate the legality of her sentence. Again, without necessarily approving the shifting litigation postures (including the timing of those shifts) by appellee's appointed counsel, we do not think the extreme remedy proposed by the Commonwealth is warranted here.

The order of the Superior Court is reversed, and the matter is remanded to that court for further proceedings consistent with this Opinion. Jurisdiction is relinquished.

Justice STEVENS did not participate in the consideration or decision of this case.

Justices SAYLOR, EAKIN, BAER, TODD and McCAFFERY join the opinion.

Justice SAYLOR files a concurring opinion.

In any event, to the extent that the Superior Court's decisions in *Kisner, Passarelli,* and *Coto* may be read to be inconsistent with our decision today, they must stand down.

Justice SAYLOR, concurring.

I join the majority opinion for the most part, although I differ with the notion that the legality of a sentence is wholly independent of the legality of the underlying conviction. *See* Majority Opinion at 311–13, 80 A.3d at 461–62. Since a conviction is the essential supporting infrastructure for a sentence, I suggest that "illegality" with respect to the former extends to the latter as well. *Cf. Fiore v. White*, 531 U.S. 225, 228–29, 121 S.Ct. 712, 714, 148 L.Ed.2d 629 (2001) (*per curiam*) (holding that a conviction for conduct which was not prohibited by a statute, as properly interpreted by a subsequent decision, violates due process, despite previous litigation of claim on direct appeal). The alternative is for courts to accept as legal a sentence which is grounded upon an illegal conviction.

From my point of view, the difficulty in this line of inquiry lies in establishing an appropriate understanding of the use of the term "illegality," for the relevant purposes. *See generally Commonwealth v. Foster*, 609 Pa. 502, 539–41, 17 A.3d 332, 355–57 (2011) (Saylor, J., concurring) (favoring a return to the concept of *"per se"* illegality as the appropriate litmus). Certainly, I support the majority's explanation that routine claims of trial-court error and fact-bound challenges cannot qualify; otherwise, the public interest in the finality of judgments of sentence would be wholly undermined. *Accord id.* Furthermore, in the present case, I am in agreement with the majority that Appellee's grievance as vindicated by the Superior Court is of a type which is fairly subordinated to ordinary rules of issue preservation.