J-S53035-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| KEVIN FELIX RODRIGUEZ, | : | |
| | : | |
| Appellant | : | No. 128 EDA 2018 |

Appeal from the Judgment of Sentence December 19, 2017
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s):  CP-46-CR-0000468-2017

BEFORE:   GANTMAN, P.J., OTT, J., and PLATT*, J.

MEMORANDUM BY GANTMAN, P.J.:                **FILED NOVEMBER 30, 2018**

Appellant, Kevin Felix Rodriguez, appeals from the judgment of sentence entered in the Montgomery County Court of Common Pleas, following his bench trial conviction of conspiracy to possess a controlled substance with intent to deliver—heroin ("PWID").[1]  We affirm.

In its opinion, the trial court fully and correctly sets forth the relevant facts and procedural history of this case.  Therefore, we have no need to restate them.

Appellant raises the following issues for our review:

> WHETHER THE EVIDENCE WAS INSUFFICIENT TO SUPPORT
> THE CONVICTION FOR COUNT 4: CRIMINAL CONSPIRACY
> TO MANUFACTURE, DELIVER, OR POSSESS WITH INTENT
> TO DELIVER A CONTROLLED SUBSTANCE?

---

[1] 18 Pa.C.S.A. § 903.

---

*   Retired Senior Judge assigned to the Superior Court.

WHETHER THE SENTENCE ORDERED FOR COUNT 4: CRIMINAL CONSPIRACY TO MANUFACTURE, DELIVER, OR POSSESS WITH INTENT TO DELIVER A CONTROLLED SUBSTANCE IS ILLEGAL IN THAT IT IS THE RESULT OF A MISAPPLICATION OF THE SENTENCING GUIDELINES IN THAT APPELLANT WAS SENTENCED UNDER THE GUIDELINES FOR CONSPIRACY TO [POSSESS WITH INTENT TO DELIVER] HEROIN WHERE SUCH AN OFFENSE DOES NOT APPEAR ON THE BILL OF INFORMATION?

(Appellant's Brief at 5).

The Controlled Substance, Drug, Device and Cosmetic Act defines PWID, in relevant part, as follows:

### § 780-113.  Prohibited acts; penalties

(a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:

\* \* \*

(30)  Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

\* \* \*

35 P.S. § 780-113(a)(30).  Thus, "[t]o establish the offense of possession of a controlled substance with intent to deliver, the Commonwealth must prove beyond a reasonable doubt that the defendant possessed a controlled substance with the intent to deliver it." *Commonwealth v. Perez*, 931 A.2d 703, 707-08 (Pa.Super. 2007).  The Commonwealth can establish the identity

of the controlled substance at trial by circumstantial evidence. ***Commonwealth v. Rickabaugh***, 706 A.2d 826, 844 (Pa.Super. 1997), *appeal denied*, 558 Pa. 607, 736 A.2d 603 (1999). ***See also Commonwealth v. Bricker***, 882 A.2d 1008, 1015 (Pa.Super. 2005) (holding Commonwealth can establish **all** elements of PWID by circumstantial evidence). "Factors to consider in determining whether the drugs were possessed with the intent to deliver include the particular method of packaging, the form of the drug, and the behavior of the defendant." ***Commonwealth v. Kirkland***, 831 A.2d 607, 611 (Pa.Super. 2003), *appeal denied*, 577 Pa. 712, 847 A.2d 1280 (2004).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Todd D. Eisenberg, we conclude Appellant's first issue merits no relief. The trial court opinion comprehensively discusses and properly disposes of Appellant's sufficiency claim. (**See** Trial Court Opinion, filed March 6, 2018, at 7-9) (finding: trial evidence demonstrated police discovered Appellant in front passenger seat of car that he and co-defendant used to travel to site of controlled buy; police recovered from front passenger area of vehicle cellphone Appellant used to plan illegal drug transactions, including heroin sale to confidential informant; police also recovered from front passenger seat area seven bags of cocaine and twenty-five bags of heroin; police found on Appellant's person over $1,000.00 cash; foregoing constituted sufficient evidence to convict Appellant of conspiracy to commit PWID). The record

- 3 -

supports the trial court's rationale. Accordingly, as to Appellant's sufficiency claim, we affirm on the basis of the trial court opinion.

In his second issue, Appellant argues that although the Commonwealth charged him with and the trial court convicted him of conspiracy to commit PWID—generally, the court sentenced him for conspiracy to commit PWID—heroin. Appellant contends the trial court determined retroactively at sentencing it had intended at the time of verdict to convict Appellant of conspiracy to commit PWID—heroin. Appellant insists the court imposed upon him an illegal sentence when it applied the offense gravity score ("OGS") associated with conspiracy to commit PWID—heroin, rather than the OGS relating to conspiracy to commit PWID—generally. Appellant concludes this Court should vacate the judgment of sentence as illegal and remand for re-sentencing. We disagree.

"[F]act-driven matters are particularly ill-suited to characterization as implicating 'sentencing illegality,' at least where, as here, the claim depends upon particulars of the conviction." ***Commonwealth v. Spruill***, 622 Pa. 299, 313, 80 A.3d 453, 461-62 (2013) (determining claim of illegal sentence, where Commonwealth charged appellant with first-degree aggravated assault but court convicted and sentenced defendant on second-degree aggravated assault, did not implicate non-waivable illegal sentencing issue, because claim related to offense Commonwealth charged and pursued, rather than some fatal flaw in sentence imposed; stating: "[E]very criminal defense claim on

direct appeal, if successful, will result in some effect upon the 'sentence,' since it is the judgment of sentence that is the appealable order. But, that does not convert all claims into sentencing claims, much less into claims that a sentence was 'illegal'"). Failure to object to the validity of a conviction at the time of verdict results in waiver of that claim. *Id.* at 312-313, 80 A.3d at 461 (stating: "[F]ailure to forward a contemporaneous objection to the court's verdict cannot be excused by resort to an 'illegal sentence' doctrine").

Where a **jury** convicts the defendant of conspiracy to commit a crime, generally, rather than conspiracy to commit a specific iteration of the underlying offense, and absent clear evidence of the jury's intent, the "verdict must be resolved in favor of the defendant, and may be construed only as a conviction of conspiracy to commit the least serious underlying offense for which the jury could have properly found the defendant to have committed." *Commonwealth v. Riley*, 811 A.2d 610, 620-21 (Pa.Super. 2002). Where, however, the **court** delivers a general guilty verdict, but its intent to convict of a more specific offense is evident, the court may impose a sentence based upon the more specific crime. *Commonwealth v. Kelly*, 78 A.3d 1136, 1146 (Pa.Super. 2013).

Instantly, the Commonwealth charged Appellant with, *inter alia*, two counts of PWID—heroin, one count of PWID—cocaine, and one count of conspiracy to commit PWID—generally. Following a bench trial on August 1, 2017, the court convicted Appellant of conspiracy to commit PWID without

naming a specific substance. Appellant did not object to the verdict.

At sentencing, Appellant objected when the court employed the OGS for conspiracy to commit PWID—heroin, rather than the OGS for conspiracy to commit PWID—generally. In response, the trial court acknowledged its intent to convict Appellant of conspiracy to commit PWID—heroin, although it had inadvertently phrased the verdict as conspiracy to commit PWID. The court then sentenced Appellant for conspiracy to commit PWID—heroin.

To the extent Appellant argues his sentence is illegal because the court applied the OGS for conspiracy to commit PWID—heroin, rather than the OGS for conspiracy to commit PWID—generally, that argument fails. Despite Appellant's attempt to couch his claim as an illegal sentence, Appellant's argument actually goes to the validity of the conviction, not the sentence. **See Spruill, supra**. Appellant arguably waived his claim, however, because he did not raise it when the court announced its verdict. **See id.**

Moreover, even if Appellant had properly preserved his second issue, he would not be entitled to relief. In its opinion, the trial court addressed Appellant's claim as follows:

> Prior to sentencing, [Appellant's] then counsel…informed the court of his belief that [Appellant] could not be sentenced for criminal conspiracy to possess *heroin* with the intent to deliver because, in announcing the court's verdict, the [court] had stated only that [it] was finding [Appellant] guilty of conspiracy to possess with intent to deliver, without specifying the drug at issue. The [court] rejected [counsel's] argument.
>
> [Counsel] was correct that the [court] inadvertently

- 6 -

neglected to specify on the record that [Appellant] was being convicted of conspiracy to possess *heroin* with intent to deliver. Had this been a *jury* trial, and had a jury failed to identify the specific object of the conspiracy, this would have required the [court] to sentence [Appellant] for conspiracy to commit the least serious underlying offense, as anything else would have required speculation as to the jury's intent. **See, e.g.**, [**Kelly, supra**; **Riley, supra**]. The instant case, however, was a *bench* trial, and the [court] thus in no way had to speculate as the fact finder's intent. Stated simply, it was the [trial court]'s intent to convict [Appellant] of criminal conspiracy to possess heroin with the intent to deliver.

In his Rule 1925(b) statement, [Appellant] now also contends that he could not have been sentenced for conspiracy to possess heroin with intent to deliver because the bills of information raised only a general charge of conspiracy to possess with intent to deliver, without identifying the specific drug at issue. … Throughout the entire case and trial, the Commonwealth was clearly alleging that [Appellant] conspired…to possess heroin with the intent to deliver. [Appellant] expressed no surprise in this allegation at trial, nor could he. [Appellant] cannot now be heard to claim relief on the basis of his conviction and sentencing for an offense he clearly knew the Commonwealth was alleging.

(Trial Court Opinion at 10-11) (internal citations to record omitted). We accept the trial court's rationale. Here, the Commonwealth charged Appellant with PWID regarding multiple drugs, including heroin, as well as the related criminal conspiracy count. The evidence at trial proved Appellant conspired with another to sell heroin, and the court's verdict on conspiracy doubtlessly related to the selling of heroin. Therefore, Appellant knew the charges against him, the Commonwealth's burden of proof, the acts involved, how to prepare a defense, and the true meaning of the bench verdict. As the trier of fact, the

court was well aware of the intent of its verdict. Given that clear intent, the court was authorized to sentence Appellant consistent with its verdict. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/30/18

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY,
PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA        :     NO. 4685-17

               V.                               :

                                               :

KEVIN FELIX RODRIGUEZ                       :

## O P I N I O N

**EISENBERG, J.**                                   **March 6, 2018**

Defendant, Kevin Felix Rodriguez, has appealed to the Superior Court of Pennsylvania from the judgment of sentence imposed on December 19, 2017. We believe that defendant's appeal is without merit.

## Background & Facts

On August 1, 2017, defendant Kevin Felix Rodriguez – and his co-defendant, Bianel Martinez – appeared for a bench trial before the undersigned, charged with: possession of a controlled substance with intent to deliver; criminal conspiracy to possess a controlled substance with intent to deliver; and related offenses.

From the evidence presented at trial, the undersigned found, *inter alia*, the following relevant facts:

On December 2, 2016, Montgomery County Detective Todd Richard met with a confidential informant who had told the detective that he could purchase heroin from an individual he knew as "Busy." "Busy" was subsequently identified as Bianel Martinez (N.T., August 1, 2017, p. 30).

In the presence of Detective Richard, the informant called "Busy" at telephone number 484-332-1838 and arranged to purchase ten bundles of

(25)

heroin from "Busy" for $500. The sale was to take place in a parking lot in West Pottsgrove Township, Montgomery County, Pennsylvania (N.T., August 1, 2017, pp. 31-32).

Both the informant and the informant's vehicle were searched and found to be free of contraband. Detective Richard gave the informant $500 with prerecorded serial numbers for the planned controlled buy. The informant drove to the buy location. Detective Richard, Montgomery County Detective James Wood, Pottstown Police Sergeant Edward Kroppe, Jr., and Pottstown Police Officers Brandon Unruh and Andrew Licwinko followed the informant to the buy location. The informant's vehicle was kept under constant visual surveillance during the drive, and during the entire incident that followed[1] (N.T., August 1, 2017, pp. 32-37, pp. 59-60, p. 63).

Upon arrival at the buy location, the informant parked his vehicle. The police parked some distance away, setting up visual surveillance of the scene. At approximately 3:25 p.m., a black Audi arrived and parked near the informant's vehicle. Bianel Martinez exited the Audi from the driver's seat, went to the informant's vehicle, and sat in the front passenger seat. Less than a minute later, Martinez exited the informant's vehicle and returned to the Audi (N.T., August 1, 2017, pp. 36-38, p. 61), following which the informant signaled to Detective Richard that the drug purchase had taken place. The police then "swarmed" the Audi (N.T., August 1, 2017, pp. 38-39, p. 61).

Inside the Audi, the police found Bianel Martinez sitting in the driver's seat. Defendant Rodriguez was in the front passenger seat, which was fully reclined. Defendant Rodriguez was lying on his stomach in what Detective Richard characterized as "an abnormal position for someone to be in."

---

[1] Detectives Richard and Wood, Sergeant Kroppe, and Officers Unruh and Licwinko all testified at defendant's trial. The undersigned found their testimony to be straightforward and candid, and credited that testimony in its entirety.

2

Defendant Rodriguez' girlfriend – Chynae Key – was sitting in the backseat of the Audi, along with a pit bull puppy (N.T., August 1, 2017, pp. 38-42, p. 82).

Martinez and defendant Rodriguez were removed from the Audi and searched. Meanwhile, the confidential informant was searched by Sergeant Kroppe and found to be in possession of ten bundles containing 100 blue wax baggies of heroin weighing 1.42 grams (N.T., August 1, 2017, pp. 88-91).

The search of Bianel Martinez yielded the following: the $500 in "buy money" that had been given to the informant to purchase the heroin; a gold Samsung cellphone; a Samsung "flip phone," which was subsequently determined to be the phone the confidential informant had called to set up the buy; and an additional $419 in U.S. currency, divided between two pockets of Martinez' hoodie. The search of Martinez' person also yielded marijuana, crack cocaine, and numerous blue bags of heroin. This heroin was packaged in identical fashion to the heroin sold to the confidential informant (N.T., August 1, 2017, pp. 61-63).

The search of defendant Rodriguez yielded $877 in currency removed from defendant's right front pocket, and $280 in currency removed from defendant's left front pocket (N.T., August 1, 2017, pp. 129-130). Officer Licwinko testified that, when he removed defendant Rodriguez from the Audi, defendant told him he had been asleep. The officer testified, however, that defendant was awake when he arrived at the Audi, and that defendant showed no sign of being asleep (N.T., August 1, 2017, pp. 124-126). Further, Detective Richard testified that, when he arrived at the Audi, he observed defendant Rodriguez reaching for what the detective characterized as a "large wad" of cash protruding from defendant's right pocket. From the evidence presented, the undersigned determined that defendant Rodriguez had not been asleep during the drug transaction but was more likely positioned as he

3

was so that he could face his girlfriend while he conversed with her in the back seat.

Sergeant Kroppe drove the Audi to Pottstown Borough Hall, where it was searched pursuant to warrant. This search yielded, *inter alia*, a blue Samsung Galaxy cellphone recovered from the front passenger seat where defendant Rodriguez had been lying, and a Coolpad cellphone from the floor of the front passenger seat (N.T., August 1, 2017, pp. 95-96). Sergeant Kroppe also recovered a clear plastic sandwich bag from the floor between the front passenger seat and the front passenger door. This bag held: six green baggies containing crack cocaine, one clear baggie containing crack cocaine, and 25 blue wax bags of heroin (N.T., August 1, 2017, pp. 96-103). This heroin was packaged identically to the heroin found on Martinez' person and the heroin sold to the confidential informant (N.T., August 1, 2017, p. 109). Officer Licwinko – who was present during the search of the Audi – testified that the drugs were discovered "in between the front passenger seat where the defendant was seated and the front passenger door, like in between the door and the seat." (N.T., August 1, 2017, p. 136).

Officer Licwinko executed search warrants on the cellphones recovered from the Audi and its occupants. The gold Samsung recovered from Bianel Martinez' person had no information connected with drug trafficking and appeared to be Martinez' personal cellphone (N.T., August 1, 20017, pp. 137-138). The Samsung flip phone recovered from Martinez was determined to have the number 484-332-1838, and was thus identified as the phone the confidential informant had called to set up the controlled buy (N.T., August 1, 2017, pp. 138-140).

The blue Samsung phone recovered from the front passenger seat and the Coolpad found on the floor of the passenger seat were also searched, pursuant to warrant. These searches revealed that both of these phones

4

contained contact information for "BAE," identified as Rodriguez' girlfriend, Chynae Key (N.T., August 1, 2017, pp. 140-142). Chynae Key's contact information did *not* appear on either of the phones recovered from Bianel Martinez (N.T., August 1, 2017, pp. 149-150). Because of this, and because of the location in which the blue Samsung and the Coolpad were discovered, the undersigned determined that these phones were utilized by defendant Rodriguez. Again, the blue Samsung was recovered from the seat on which Rodriguez was lying, and the Coolpad was recovered from the floor at defendant's feet.

The search of the Coolpad revealed numerous communications between the Coolpad and the flip phone with number 484-332-1838 that was used by Martinez to set up the controlled buy of heroin. Among these communications were nine phone calls made between the Coolpad and the flip phone on the morning and early afternoon of December 2, 2016. These calls began at 9:26 a.m., with the final call coming at 1:38 p.m. (N.T., August 1, 2017, pp. 152-158). The undersigned thus determined that defendant Rodriguez and Bianel Martinez were in frequent communication during the morning and early afternoon of the day of the controlled buy, to which they arrived together in the Audi. The search of the phones further revealed text messages and a total of sixteen phone calls exchanged between the flip phone and the Coolpad on December 1, 2016 (N.T., August 1, 2017, pp. 159-160).

Montgomery County Detective James Wood was qualified as an expert in narcotics investigations. Detective Wood testified that, in his expert opinion, text messages sent from the Coolpad to various numbers in the days prior to December 2, 2016 utilized jargon employed by drug traffickers in the planning of illegal drug transactions, including heroin. The detective specifically referenced a text message sent from the Coolpad (Rodriguez) to the flip phone (Martinez) on December 1, 2016, discussing "mad drops,"

5

which the detective testified was code for illegal narcotics (N.T., August 1, 2017, pp. 206-210). Detective Wood further testified that, in his expert opinion, all of the drugs recovered in the instant case were possessed with the intent to deliver on the basis of, *inter alia*: the quantity of the drugs; their packaging; the communications between the cellphones; the amount of cash recovered from the defendants; and the fact that the cash was recovered from different pockets, indicating to the detective that the different collections of cash were used for different drugs (N.T., August 1, 2017, pp. 197-210). The undersigned determined that Detective Wood's expert opinion accurately reflected the facts.

From the totality of the evidence presented, the undersigned determined that defendant Rodriguez utilized the Coolpad in planning illegal drug transactions, including the 1.42 grams of heroin sold to the confidential informant by Martinez on December 2, 2016.

Accordingly, the undersigned found defendant guilty of criminal conspiracy to possess heroin with the intent to deliver. The undersigned also found Bianel Martinez guilty of conspiracy, as well as actual possession with intent to deliver heroin, cocaine, and marijuana, as well as related offenses. Although – as a conspirator of Martinez – the law also would have supported a guilty verdict for defendant Rodriguez for the offense of possession of heroin with intent to deliver, the undersigned chose to acquit Rodriguez of all offenses other than conspiracy, reflecting that it was Martinez who physically possessed the drugs and it was Martinez who performed the actual delivery of the heroin. See, e.g., *Commonwealth v. Perez*, 931 A.2d 703 (Pa. Super. 2007), holding that, where the Commonwealth has proven a conspiracy to possess drugs with intent to deliver, the conspirators may also be convicted of possession with intent to deliver regardless of whether the Commonwealth

6

established that the defendant either actually or constructively possessed drugs.

Defendant appeared before the undersigned for sentencing on December 19, 2017. Following hearing, the undersigned imposed a standard range sentence of not less than fifteen (15) nor more than thirty (30) months imprisonment for criminal conspiracy to possess less than ten (10) grams of heroin with the intent to deliver.

On December 28, 2017, defendant, *pro se*, filed a timely notice of appeal to the Superior Court of Pennsylvania. On January 5, 2018, Douglas Waltman, Esquire, filed his entry of appearance as defendant's appellate counsel, along with a timely amended notice of appeal.

On January 23, 2018, Mr. Waltman filed on defendant's behalf a statement of the errors complained of on appeal, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). We believe that defendant's Rule 1925(b) statement raises no issue entitling him to appellate relief.

## Discussion

In paragraph one of his Rule 1925(b) statement, defendant contends that the evidence was insufficient to support defendant's conviction for criminal conspiracy because the Commonwealth "failed to establish the element of appellant's possession." Defendant is not entitled to appellate relief on this claim.

The standard for reviewing a claim challenging the sufficiency of the evidence is well-settled. See, e.g., *Commonwealth v. Tarrach*, 42 A.3d 342, 345 (Pa. Super. 2012):

> "[The reviewing Court] must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where

7

there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.

"The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented . . . The Commonwealth's burden may be met wholly by circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact-finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances."

See also, *Commonwealth v. Best*, 120 A.3d 329, 341 (Pa. Super. 2014) (citations omitted). And see, *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000) (citations omitted).

The gravamen of defendant's sufficiency of the evidence claim is that defendant could not properly be convicted of criminal conspiracy to possess heroin with the intent to deliver because the Commonwealth failed to prove that defendant possessed heroin. This claim is meritless, first and foremost because "possession" is not an element of criminal conspiracy to possess a controlled substance with intent to deliver.

To sustain a conviction for criminal conspiracy, the Commonwealth must establish that the defendant: 1) entered into an agreement with another person to commit or aid in an unlawful act; 2) that the agreement was entered into with a shared criminal intent; and 3) that an overt act was done in furtherance of the conspiracy. See, e.g., *Commonwealth v. McCall*, 911 A.2d 992, 996 (Pa. Super. 2006), citing *Commonwealth v. Hennigan*, 753 A.2d 245, 253 (Pa. Super. 2000). It is well-settled that each of these elements may be established by circumstantial evidence. See, e.g., *Commonwealth v. Johnson*, 719 A.2d 778, 784-785 (Pa. Super. 1998). In the context of the instant case, the Commonwealth was thus required to prove that defendant Rodriguez entered into an agreement with Bianel Martinez to the effect that one or both of them would possess heroin with the intent to deliver that

8

heroin to another person, and that one or both of them performed at least one overt act in furtherance of this agreement. The Commonwealth met this burden.

As detailed above, the undersigned determined that the Coolpad cellphone was controlled and utilized by defendant Rodriguez. The undersigned determined that this cellphone was utilized by Rodriguez to plan illegal drug transactions, including the heroin sold by Martinez to the confidential informant. In determining that Rodriguez was not simply a passive bystander to this sale, the undersigned considered not only the communications involving the Coolpad, but also, *inter alia*, the large amount of cash on defendant's person divided between two pockets and the fact that drugs were found not only on Martinez' person, but also on Rodriguez' side of the Audi.

Accordingly, the undersigned determined that the evidence was fully sufficient to establish that defendant Rodriguez entered into an agreement with Bianel Martinez for the illegal sale of heroin, and that the parties took the overt step of furthering this agreement by driving together to the buy location where Martinez actually delivered the heroin.

Defendant's sufficiency of the evidence claim is thus without merit.

In paragraph two of his Rule 1925(b) statement, defendant contends that the sentence imposed on him was an illegal sentence because he was sentenced for conspiracy to possess heroin with intent to deliver whereas the bills of information charged only criminal conspiracy to possess with intent to deliver without specifying that the drug at issue was heroin. Defendant contends that his should have been "sentenced under the default guidelines for Conspiracy to [Possess with Intent to Deliver] a Controlled Substance." We disagree.

9

Prior to sentencing, defendant's then-counsel – Guy Sciolla, Esquire – informed the court of his belief that defendant could not be sentenced for criminal conspiracy to possess *heroin* with the intent to deliver because, in announcing the court's verdict, the undersigned had stated only that he was finding defendant guilty of conspiracy to possess with intent to deliver, without specifying the drug at issue. The undersigned rejected Mr. Sciolla's argument.

Mr. Sciolla was correct that the undersigned inadvertently neglected to specify on the record that defendant was being convicted of conspiracy to possess *heroin* with intent to deliver (N.T., August 1, 2017, p. 273). Had this been a *jury* trial, and had a jury failed to identify the specific object of the conspiracy, this would have required the undersigned to sentence defendant for conspiracy to commit the least serious underlying offense, as anything else would have required speculation as to the jury's intent. See, e.g., *Commonwealth v. Kelly*, 78 A.3d 1136 (Pa. Super. 2013). See also, *Commonwealth v. Riley*, 811 A.2d 610 (Pa. Super. 2002). The instant case, however, was a *bench* trial, and the undersigned thus in no way had to speculate as to the fact finder's intent. Stated simply, it was the undersigned's intent to convict defendant of criminal conspiracy to possess heroin with the intent to deliver.

In his Rule 1925(b) statement, defendant now also contends that he should not have been sentenced for conspiracy to possess heroin with intent to deliver because the bills of information raised only a general charge of conspiracy to possess with intent to deliver, without identifying the specific drug at issue. Defendant is not entitled to relief on this basis. Throughout this entire case and trial, the Commonwealth was clearly alleging that defendant conspired with Martinez to possess heroin with the intent to deliver. Defendant expressed no surprise in this allegation at trial, nor could

10

he. Defendant cannot now be heard to claim relief on the basis of his conviction and sentencing for an offense he clearly knew the Commonwealth was alleging.

Finally, in paragraph three (3) of his Rule 1925(b) statement, defendant contends that the record fails to establish that his waiver of a jury trial was knowing, intelligent, and voluntary. This claim is meritless.

Pa.R.Crim.P. 620 provides, *inter alia*, that where a defendant elects to proceed with a bench trial and waive his right to a jury:

> "The judge shall ascertain from the defendant whether this is a knowing and intelligent waiver, and such colloquy shall appear on the record. The waiver shall be in writing, made a part of the record, and signed by the defendant, the attorney for the Commonwealth, the judge, and the defendant's attorney as a witness."

In the instant case, on August 1, 2017 defendant executed a written waiver of jury trial which was filed of record on August 2, 2017. This written waiver is signed by all of the required parties and provides that defendant understood that, in electing to proceed with a bench trial, he was giving up his right to be tried by a jury chosen from members of the community, that any verdict rendered by a jury would have to be unanimous, and that he would be permitted to participate in the selection of a jury panel. The undersigned supplemented this with the required oral on-the-record colloquy (N.T., August 1, 2017, pp. 23-24), in which defendant acknowledged signing and understanding the written waiver. During the course of this oral colloquy the undersigned ascertained that defendant knew he had an absolute right to a jury trial and that no one had forced, threatened, or promised defendant anything for waiving a jury trial. The court thus accepted the waiver as knowingly, voluntarily, and intelligently rendered.

11

Defendant has cited no specific manner in which his waiver of a jury trial was defective, and we believe it was plainly fully sufficient.

For all of the foregoing reasons, we believe that defendant's appeal should be denied and his judgment of sentence affirmed.

BY THE COURT:

TODD D. EISENBERG, J..

Copies of the above Opinion
sent to the following
on March 6, 2018
Robert Martin Falin, Esquire, Deputy District Attorney, Chief of Appeals (interoffice mail)
Douglas J. Waltman, Esquire (first class mail)
Clerk of Court (interoffice mail)

Secretary

12