J-S69011-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ALEXIS A. BROWN | |
| Appellant | No. 494 EDA 2015 |

Appeal from the Judgment of Sentence January 16, 2015
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0004497-2013

BEFORE:  GANTMAN, P.J., FORD ELLIOTT, P.J.E., and OLSON, J.

MEMORANDUM BY GANTMAN, P.J.:                **FILED JANUARY 27, 2016**

Appellant, Alexis A. Brown, appeals from the judgment of sentence entered in the Montgomery County Court of Common Pleas, following his bench trial convictions for two counts of theft by deception and one count each of tampering with public records or information, forgery, and false statements (to obtain food stamps).[1]  We affirm Appellant's convictions but vacate and remand for resentencing.

In its opinion, the trial court fully sets forth the relevant facts and procedural history of this case.  Therefore, we have no reason to restate them.  We add only that the court sentenced Appellant on January 16, 2015,

---

[1] 18 Pa.C.S.A. §§ 3922(a)(1); 4911(a)(2); 4101(a)(2); 62 P.S. § 481, respectively.

to an aggregate term of six (6) to twenty-three (23) months' imprisonment, plus five (5) years' probation. Appellant timely filed a notice of appeal on February 17, 2015. On February 20, 2015, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), which Appellant timely filed on March 12, 2015.

Appellant raises the following issues for our review:

> DID THE TRIAL COURT ERR IN FINDING THAT THE EVIDENCE WAS SUFFICIENT TO SHOW AS A MATTER OF LAW THAT APPELLANT WAS GUILTY OF THEFT BY DECEPTION IN RELATION TO THE LOST EARNINGS WHEN THE EVIDENCE PRESENTED BY THE COMMONWEALTH FAILED TO SHOW BEYOND A REASONABLE DOUBT THAT APPELLANT MISREPRESENTED HIS EMPLOYMENT STATUS?
>
> DID THE COURT ERR IN FINDING THAT THE EVIDENCE WAS SUFFICIENT TO SHOW AS A MATTER OF LAW THAT APPELLANT WAS GUILTY OF THEFT BY DECEPTION IN RELATION TO THE MEDICAL EXPENSES WHEN ANY ALLEGED DECEPTION HAD NO BEARING UPON ANY PAYMENTS MADE BY THE VICTIMS COMPENSATION ASSISTANCE PROGRAM FOR MEDICAL TREATMENT?
>
> DID THE COURT ERR IN FINDING THAT THE EVIDENCE WAS SUFFICIENT TO SHOW AS A MATTER OF LAW THAT APPELLANT WAS GUILTY OF FRAUD OR FALSE STATEMENTS IN RECEIVING FOOD STAMPS/PUBLIC ASSISTANCE WHERE THE COURT CONCLUDED THAT THE ALLEGED EMPLOYMENT WAS DETERMINED TO BE NONEXISTENT. THIS CREATED CONFLICTING FACT DETERMINATIONS THAT ARE IRRECONCILABLE[.]
>
> DID THE COURT ERR IN FINDING THAT THE EVIDENCE WAS SUFFICIENT TO SHOW AS A MATTER OF LAW THAT APPELLANT WAS GUILTY OF TAMPERING WITH PUBLIC RECORDS WHERE THE EVIDENCE WAS BASED PURELY UPON OPINIONS OF LAY WITNESSES THAT THE RECORD WAS CHANGED?

DID THE COURT ERR IN FINDING APPELLANT GUILTY OF BOTH TAMPERING WITH PUBLIC RECORDS AND FORGERY BECAUSE THE FINDING OF GUILT IN SPECIAL PROVISIONS PRECLUDE PROSECUTION OF THE CORRELATING GENERAL PROVISION OF THE PENAL CODE?

DID THE COURT ERR IN GRADING THE CONVICTION FOR THEFT BY DECEPTION, RELATING TO THE MEDICAL EXPENSES, AS A THIRD DEGREE FELONY WHEN THE ALLEGED COST OF SERVICES DID NOT EXCEED $2,000.

DID THE COURT ERR IN GRADING THE FRAUD OR FALSE STATEMENTS IN RECEIVING FOOD STAMPS/PUBLIC ASSISTANCE AS A THIRD DEGREE FELONY WHEN THE ALLEGED VALUE OF THE ASSISTANCE APPELLANT RECEIVED DID NOT EXCEED $3,000.

(Appellant's Brief at 6-7).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable William R. Carpenter, we conclude Appellant's first, second, third, and fourth issues merit no relief. The trial court's opinion comprehensively discusses and properly disposes of those questions. (**See** Trial Court Opinion, filed May 8, 2015, at 10-18) (finding: **(1)** evidence at trial established Appellant lied about his employment status on Victims Compensation Assistance Program ("VCAP") application, where Appellant submitted suspicious paystubs and suspicious employer verification information; paystubs raised "red flags" because they did not contain employer identification number, employee identification number, or Appellant's social security number; purported letter from employer and employer verification form also raised red flags, where employer letter was not on letterhead, signature on employer letter merely

- 3 -

stated: "Management," and two phone numbers listed as belonging to employer were wrong numbers; additionally, paystubs, employer letter, and employer verification form were submitted from Appellant's fax machine, not from purported employer; VCAP claims specialist, VCAP compliance reviewer, and Special Agent for Attorney General's Office were unable to verify existence of Appellant's purported employer, "Muscle Therapy"; Appellant listed business address as 1616 Walnut Street, but parties stipulated no company called Muscle Therapy leased office space in that building during relevant timeframe; Appellant also submitted different employer information on VCAP application than he submitted on Philadelphia Hand Center patient intake form; court concluded Appellant lied about employment status on VCAP form and submitted fraudulent paperwork to support his claim for lost wages; Commonwealth produced sufficient evidence to sustain Appellant's theft by deception conviction (related to lost earnings); **(2)** when Appellant submitted VCAP application, Appellant acknowledged that consequence of providing fraudulent information on application would be ineligibility to receive lost wages; additionally, once applicant commits fraud, he is ineligible to receive **any** compensation from VCAP; because Appellant provided fraudulent information to obtain alleged lost earnings, Appellant was also ineligible to receive compensation for medical expenses; Commonwealth produced sufficient evidence to sustain Appellant's theft by deception conviction (related to medical expenses); **(3)**

contrary to Appellant's assertions, court did not make express determination that Appellant's employment was non-existent; rather, court decided Appellant lied about his employment on VCAP application to overstate his claim for lost wages; Appellant also failed to disclose to Public Welfare agency any VCAP payments he received,[2] as he was required to do, which would have adversely affected his eligibility for public assistance and reduced or eliminated amount of public assistance he received; Commonwealth produced sufficient evidence to sustain Appellant's conviction for false statements (to obtain food stamps);[3] **(4)** Appellant submitted falsified documents in his VCAP application; specifically, Appellant presented fraudulent paystubs, fraudulent employer letter, and fraudulent employer verification form; evidence demonstrated Appellant knowingly produced false or altered documentation to receive compensation for lost wages; Commonwealth produced sufficient evidence to sustain Appellant's tampering with public records or information conviction). Accordingly, we affirm on the basis of the trial court's opinion as to issues one through four.

_____

[2] Appellant also failed to disclose his purported earnings to the Public Welfare agency.

[3] On appeal, Appellant appears to have abandoned his challenge to the sufficiency of the evidence for his false statements conviction. (*See* Appellant's Brief at 17-18.) Instead, Appellant now challenges only the grading for the sentence he received for this conviction. We address Appellant's grading complaint in the analysis of his seventh issue on appeal.

In his fifth issue, Appellant invokes the "specific/general" principle of law that prohibits prosecutions under the general provisions of the penal code when there are special provisions available. Appellant asserts the Commonwealth's prosecution of Appellant for tampering with public records falls under the specific provisions of the Welfare Code, which prohibited the Commonwealth from also prosecuting him under the general theft by deception provisions of the Crimes Code for the same behavior. Appellant admits that in his Rule 1925(b) statement he challenged the Commonwealth's prosecution of him for tampering with public records and forgery as barred under the "specific/general" principle. Appellant maintains he meant to challenge the Commonwealth's prosecution of him for tampering with public records and theft by deception, as barred by this principle of law. Appellant concludes his error was inadvertent, and this Court should remand to provide Appellant and the trial court an opportunity to address the issue he intended to raise on appeal. We cannot agree.

As a general rule, "to preserve their claims for appellate review, appellants must comply whenever the trial court orders them to file a Statement of Matters Complained of on Appeal pursuant to [Rule] 1925. Any issues not raised in a [Rule] 1925(b) statement will be deemed waived." **Commonwealth v. Castillo**, 585 Pa. 395, 403, 888 A.2d 775, 780 (2005) (quoting **Commonwealth v. Lord**, 553 Pa. 415, 420, 719 A.2d 306, 309 (1998)). **See also** Pa.R.A.P. 302(a) (stating issues not raised in trial court

are waived and cannot be raised for first time on appeal).

Instantly, Appellant presented his fifth issue on appeal in his Rule 1925(b) statement as follows: "The court erred in finding Appellant guilty of both Tampering with Public Records and Forgery because the finding of guilt in special provisions preclude[s] prosecution of the correlating general provision of the penal code."  (Appellant's Rule 1925(b) Statement, filed 3/12/15, at 2, ¶e).

In response to Appellant's Rule 1925(b) statement, the trial court addressed Appellant's "specific/general" argument in relation to his convictions for tampering with public records and forgery.  Appellant did not seek permission to file an amended or supplemental Rule 1925(b) statement to correct his purported error.  *See* Pa.R.A.P. 1925(b)(2) (stating: "Upon application of the appellant and for good cause shown, the judge may enlarge the time period initially specified or permit an amended or supplemental Statement to be filed.  …  In extraordinary circumstances, the judge may allow for the filing of a Statement or amended or supplemental Statement *nunc pro tunc*").  Likewise, Appellant did not file a motion in this Court acknowledging his alleged error and requesting a remand to give the trial court an opportunity to address Appellant's "intended" appellate issue.  Instead, Appellant waited until he filed his appellate brief to explain his error, which denied the trial court a chance to address Appellant's proposed issue in a timely manner.  Appellant's failure to preserve his claim before the

trial court compels waiver of Appellant's fifth issue on appeal. **See** Pa.R.A.P. 302(a); Pa.R.A.P. 1925(b)(2); **Castillo, supra**.

Moreover, our legislature limited the "specific/general" rule with the enactment of 42 Pa.C.S.A. § 9303, which provides:

> **§ 9303. Liability for violations of general and specific criminal statutes**
>
> Notwithstanding the provisions of 1 Pa.C.S. § 1933 (relating to particular controls general) or any other statute to the contrary, where the same conduct of a defendant violates more than one criminal statute, the defendant may be prosecuted under all available statutory criminal provisions without regard to the generality or specificity of the statutes.

42 Pa.C.S.A. § 9303 (effective February 7, 2003). **See also Commonwealth v. Nypaver**, 69 A.3d 708 (Pa.Super. 2013) (explaining enactment of 42 Pa.C.S.A. § 9303 halted operation of "specific/general" rule of statutory construction in context of criminal prosecution, and cases which applied that concept as basis for their holdings are no longer precedential; rejecting appellant's argument that Commonwealth could prosecute him only under specific provision of Unemployment Compensation Law prohibiting wrongful receipt of unemployment benefits, but not under general theft by deception provisions of Crimes Code).

Here, Section 9303 was in effect at the time the Commonwealth initiated prosecution in this matter. Consequently, the Commonwealth was free to charge Appellant for his criminal conduct under all available statutory criminal provisions. **See** 42 Pa.C.S.A. § 9303; **Nypaver, supra**. Therefore,

even if Appellant had preserved his fifth issue before the trial court, it would merit no relief.

For purposes of disposition, we combine Appellant's sixth and seventh issues on appeal. Appellant argues his convictions for theft by deception (related to medical expenses) and false statements were incorrectly graded as third-degree felonies for sentencing. Appellant asserts the financial loss associated with these convictions was not enough to support sentences as third-degree felonies. Rather, Appellant maintains his convictions for theft by deception (related to medical expenses) and false statements should have been graded as first-degree misdemeanors for sentencing.

Regarding his false statements conviction, Appellant insists the court must have incorrectly calculated the amount of his welfare fraud by considering every month in which Appellant received food stamps, from August 2011 until June 2013. Instead, Appellant claims the amount he received relative to his false statements conviction should have been calculated from the date he first received payment from VCAP and failed to report it to the Public Welfare agency. Appellant concludes he was improperly sentenced on his theft by deception (related to medical expenses) and false statements convictions as third-degree felonies, and this Court must grant appropriate relief. We agree in part that some relief is due.

"A claim that the court improperly graded an offense for sentencing

purposes implicates the legality of a sentence." **Commonwealth v. Mendozajr**, 71 A.3d 1023, 1027 (Pa.Super. 2013) (quoting **Commonwealth v. Pantalion**, 957 A.2d 1267, 1271 (Pa.Super. 2008)). When examining a challenge to the legality of a sentence, our scope and standard of review is as follows:

> A claim that implicates the fundamental legal authority of the court to impose a particular sentence constitutes a challenge to the legality of the sentence. If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction. An illegal sentence must be vacated. When the legality of a sentence is at issue on appeal, our standard of review is *de novo* and our scope of review is plenary.

**Mendozajr, supra** (quoting **Commonwealth v. Catt**, 994 A.2d 1158, 1160 (Pa.Super. 2010) (*en banc*)) (internal citations and quotation marks omitted). **See also Commonwealth v. Berry**, 877 A.2d 479 (Pa.Super. 2005) (*en banc*), *appeal denied*, 591 Pa. 688, 917 A.2d 844 (2007) (explaining challenges to legality of sentence are non-waiveable, assuming jurisdiction is proper).[4]

---

[4] The trial court interprets Appellant's claims as challenging the underlying convictions rather than the legality of the sentences for those convictions. In **Commonwealth v. Spruill**, 622 Pa. 299, 80 A.3d 453 (2013), the issue before the appellate Court was whether the trial court erred by convicting the appellee of aggravated assault graded as a second-degree felony where the Commonwealth charged her with aggravated assault as a first-degree felony. In **Commonwealth v. Shamsud-Din**, 995 A.2d 1224 (Pa.Super. 2010), the issue was whether the trial court erred by convicting the appellant of simple assault as a third-degree misdemeanor where: the Commonwealth had not charged the appellant with that offense as a third-

*(Footnote Continued Next Page)*

The Crimes Code provides the following grading of theft offenses, in relevant part:

**§ 3903.  Grading of theft offenses**

**(a)      Felony    of    the    second    degree.**—Theft constitutes a felony of the second degree if:

(1)    The offense is committed during a manmade disaster, a natural disaster or a war-caused disaster and constitutes a violation of section 3921 (relating to theft by unlawful taking or disposition), 3925 (relating to receiving stolen property), 3928 (relating to unauthorized use of automobiles and other vehicles) or 3929 (relating to retail theft).

(2)    The property stolen is a firearm.

(3)    In the case of theft by receiving stolen property, the property received, retained or disposed of is a firearm.

(4)    The property stolen is any amount of anhydrous ammonia.

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

degree misdemeanor and simple assault as a third-degree misdemeanor was not a lesser included offense to any of the charges before the trial court.  In each case, the reviewing Courts considered the issues as challenges to the respective convictions, which required specific and timely objections to avoid waiver.    In   both   **Spruill**   and   **Shamsud-Dim**,   the   remedy   for   each appellant's complaint would have been an arrest of judgment for the challenged conviction.

Here, Appellant claims the sentences on his convictions for false statements and    for    theft    (medical    expenses)    were    improper    because    the Commonwealth's    evidence    supported    only    first-degree    misdemeanor sentences.  As well, Appellant does not seek an arrest of judgment for these convictions.  Therefore, **Spruill** and **Shamsud-Dim** are inapposite, and the trial court erred in relying on those cases to define and decide Appellant had waived his issues.

> (5)    The amount involved is $100,000 or more but less than $500,000.
>
> **(a.1)    Felony of the third degree.**—Except as provided in subsection (a) or (a.2), theft constitutes a felony of the third degree if the amount involved exceeds $2,000, or if the property stolen is an automobile, airplane, motorcycle, motorboat or other motor-propelled vehicle, or in the case of theft by receiving stolen property, if the receiver is in the business of buying or selling stolen property.
>
> **(a.2)    Felony of the first degree.**—Except as provided in subsections (a) and (a.1), theft constitutes a felony of the first degree if:
>
> (1)    in the case of theft by receiving stolen property, the property received, retained or disposed of is a firearm and the receiver is in the business of buying or selling stolen property; or
>
> (2)    the amount involved is $500,000 or more.
>
> **(b)    Other grades.**—Theft not within subsection (a), (a.1) or (a.2), constitutes a misdemeanor of the first degree, except that if the property was not taken from the person or by threat, or in breach of fiduciary obligation, and:
>
> (1)    the amount involved was $50 or more but less than $200 the offense constitutes a misdemeanor of the second degree; or
>
> (2)    the amount involved was less than $50 the offense constitutes a misdemeanor of the third degree.
>
> *    *    *

18 Pa.C.S.A. § 3903.  Additionally, the Public Welfare Code provides the following grading for a false statements conviction:

**§ 481.  False statements; investigations; penalty**

(a) Any person who, either prior to, or at the time of, or subsequent to the application for assistance, by means of a willfully false statement or misrepresentation, or by impersonation or by willfully failing to disclose a material fact regarding eligibility or other fraudulent means, secures, or attempts to secure, or aids or abets or attempts to aid or abet any person in securing assistance, or Federal food stamps, commits a crime which shall be graded as provided in subsection (b).

(b) Any person violating subsection (a) commits the grade of crime determined from the following schedule:

| Amount of Assistance or Food Stamps | Degree of Crime |
| --- | --- |
| $3,000 or more | Felony of the third degree |
| $1,500 to $2,999 | Misdemeanor of the first degree |
| $1,000 to $1,499 | Misdemeanor of the second degree |
| $999 and under, or an attempt to commit any act prohibited in subsection (a) | Misdemeanor of the third degree |

\* \* \*

62 P.S. § 481.

Instantly, the court convicted Appellant of theft by deception (related to lost earnings, at count one), theft by deception (related to medical expenses, at count two), tampering with public records or information (count three), false statements (count four), and forgery (count six). (The Commonwealth withdrew the charge of identity theft (count five) at trial.) At sentencing, the following exchange occurred between the court and

counsel regarding the grading of Appellant's offenses for sentencing purposes:

> [THE COURT]:                All right, we are here for sentencing.
>
> The [c]ourt has conferred with counsel. Counsel agree the guidelines are properly calculated. We have theft by deception, 3 to 14, a felony three, level three offenses; tampering with public records, felony three, R.S. to 12, level two; welfare fraud,[5] 3 to 14 in the standard range, level three, felony three; forgery M-1, R.S. to 9, level two.[6]
>
> Were there any additions or corrections to the presentence investigation and report?
>
> [DEFENSE COUNSEL]:      No, Your Honor.
>
> [COMMONWEALTH]:        The only amendment I would make is I believe the felony three theft was properly indicated as a standard range of 3 to 14 months. **The misdemeanor one theft I believe would be R.S. to 9**, and the felony tampering would be R.S. to 12.
>
> [THE COURT]:                Very well.

(N.T. Sentencing, 1/16/15, at 3; R.R. at Exhibit E) (emphasis added). The

Commonwealth also offered the following sentencing recommendation:

> So the Commonwealth's recommendation in this matter is for a standard range sentence, but it is a sentence that will involve some total confinement in this case.

---

[5] The court referred to Appellant's false statements conviction as welfare fraud.

[6] Appellant's theft and false statements were actually level two offenses of varying degrees from third-degree felony to first-degree misdemeanor.

On count one, theft by deception, we're asking for a standard range sentence of 9 to 23 months, with restitution in the amount of $5,390 payable to the Pennsylvania Commission on Crime and Delinquency Victims' Compensation Assistance Program.

On count two, theft by deception, **a misdemeanor**, we are asking for 9 to 23 months concurrent with count one, and $1,462 in restitution payable to the same victim.

On count three, tampering with public records, we are asking for a sentence of five years' probation concurrent with count three but consecutive to counts one and two.

On count four, the false statements charge, five years' probation concurrent with count three but consecutive to counts one and two.

And count six, forgery, the same sentence, five years' probation concurrent with counts three and four, consecutive to counts one and two, for a total sentence recommendation of 9 to 23 months, followed by five years' probation, and total of $6,852 restitution.

(***Id.*** at 16; R.R. at Exhibit E) (emphasis added).

The court sentenced Appellant for the theft by deception conviction (related to medical expenses) to six (6) to twenty-three (23) months' imprisonment, plus three (3) years' probation, with restitution in the amount of $1,462.00. Given the court's on-the-record exchange with counsel, the court was aware the theft offense (related to medical expenses) was a first-degree misdemeanor. ***See id.*** ***See also*** 18 Pa.C.S.A. § 3903(b). The court's sentence falls within the standard range for a first-degree misdemeanor theft offense. Additionally, the certified docket entries expressly state: "Count 2 is amended to (M1) grading at sentencing." (***See***

- 15 -

Docket Entries at 3; R.R. at Exhibit A). Thus, we see no error with respect to the sentence imposed for Appellant's theft by deception conviction (related to medical expenses).

Regarding Appellant's false statements conviction (count four), the court imposed a concurrent term of six (6) to twenty-three (23) months' imprisonment, plus three (3) years' probation, with this offense also graded as a third-degree felony. Nevertheless, the parties **agree** the court should have graded this offense as a first-degree misdemeanor at sentencing.[7] (**See** Appellant's Brief at 18; 20; Commonwealth's Brief at 27.) **See also** 62 P.S. § 481(b). In its opinion, the court likewise concedes the evidence at trial showed the false statements/welfare fraud was a first-degree misdemeanor, *i.e.*, between $1,500.00 and $2,999.00. (**See** Trial Court Opinion at 19.) Given the court's error in waiving the sentencing issue, we conclude the best resolution of this case is to vacate the judgment of sentence and remand for resentencing with the proper grading (amend false statements/welfare fraud to a first-degree misdemeanor for sentencing).

---

[7] The Commonwealth suggests the court's grading error is harmless because the court imposed a standard range sentence within the statutory limits, even if Appellant's false statements conviction had been graded properly as a first-degree misdemeanor. While this statement might seem appealing in some respects, we cannot ignore other ramifications associated with the improper grading of the offense for sentencing. **See, e.g.,** 204 Pa.Code § 303.15 (dictating offense gravity score and prior record points associated with offenses; misdemeanor offenses carry different offense gravity score and prior record point value than felony offenses). Therefore, we reject the Commonwealth's position.

*See generally Commonwealth v. Bartrug*, 732 A.2d 1287 (Pa.Super. 1999), *appeal denied*, 561 Pa. 651, 747 A.2d 896 (1999) (holding sentencing error in multi-count case normally requires appellate court to vacate entire judgment of sentence so trial court can restructure its sentencing scheme on remand). Accordingly, we affirm Appellant's convictions, but we vacate the judgment of sentence in its totality and remand for resentencing.

Judgment of sentence vacated; case remanded for resentencing. Jurisdiction is relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/27/2016

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY
PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA : CP-46-CR-0004497-2013

V. :

ALEXIS BROWN : 494 EDA 2015

OPINION

CARPENTER J. MAY 8, 2015

FACTUAL AND PROCEDURAL HISTORY

Appellant, Alexis Brown, appeals from the judgment of sentence imposed on January 16, 2015, following his conviction at a non-jury trial of two counts of theft by deception[1], tampering with public records or information[2], false statements[3] and forgery[4].

On June 30, 2014, this Court presided over a non-jury trial. At trial, Tracy Clouser, a claims specialist for the Victim's Compensation Assistance Program, testified. (Trial by Judge 6/30/14 pp. 9 - 10). The Victim's Compensation Assistance Program ("VCAP") is a program designed to financially help victims of crime with the financial burden they experience because of the crime. Id. at 9. The kind of things a victim may be compensated for may be medical expenses, loss of earnings, funeral expenses or stolen cash

---
[1]   18 Pa.C.S.A. §3922(a)(1);
[2]   18 Pa.C.S.A. §4911(a)(2);
[3]   62 Pa.C.S.A. §481(a);
[4]   18 Pa.C.S.A. §4101(a)(2).

claims. Id. at 9 - 10. As a claim specialist, Ms. Clouser is assigned a claim, she reviews the claim to make sure that all mandatory documents are received and then process the claim for payment. Id. at 10.

In October of 2012, Ms. Clouser was assigned to review Appellant's claim. Id. at 11. She reviewed Appellant's claims summary which is a summary that contains victim information, what was reported, what happened, what the injuries were. Id. at 13. It also contains the employer at the time of the crime, date of the crime, when it was reported, what the police department the incident was reported to and insurance questions. Id. Based upon Appellant's claim form, Appellant provided as his address, 2437 West Allegheny Street, Philadelphia, PA 19132 and his phone number as 347-482-9611. Id. at 14. Appellant also provided his employer as Muscle Therapy at 1616 Walnut Street, Philadelphia, PA 19103 and a phone number of 267-253-3956. Id. The date of the crime was reported as September 5, 2012. Id. at 15.

As part of the process, Ms. Clouser explained that she reviews the police report which will usually have the injuries listed. She verifies the medical bills to see if they correlate to the injuries listed by the police department. Id. In Appellant's case several medical expenses were listed. Id. In a request for lost earnings, she sends out a verification form to the employer and a request for a certifying doctor's name and address who can certify that the injuries the victim suffered from the crime disabled the employee from working. Id.

In this case, Ms. Clouser testified as to the documentation and verification received from Appellant on October 19, 2012, sent from Appellant's

2

Scanned 05/21/2015

fax. Id. at 16, 17 - 18. Specifically, she received statement from Pennsylvania Hospital stating that Appellant owed $2,027.00. Id. at 16. Since an itemized bill was never forwarded no payment was made on that bill. Id. at 17. The next document that was submitted was a statement from Albert Einstein Medical Center reflecting that Appellant owed $200.00. Id. at 17. An itemized statement was not provided and no payment was made on that bill. Id. There were other medical expenses that included appropriate verification and were in fact paid out to Appellant. Id. at 30. These include medical bills from Philadelphia Hand Center. Id. Ms. Clouser did receive an itemized medical bill. Id. at 31.

Next, Appellant provided two paystubs and an employer letter. The first paystub has a pay date of September 7, 2012. Id. at 19. It showed that Appellant's gross pay was for $1,295.00 for 37 hours of work. Id. at 19 - 20. That equals $35.00 an hour. Id. at 20. The second paystub reflects a pay date of August 24, 2012 and a gross pay of $1400.00 for 40 hours of work. Id. Finally, a employer letter was submitted. Id. at 22. It read "To whom it may concern, Alexis Brown is a valued employee at the Muscle Therapy Company. If you have any questions or concerns, please don't hesitate to call or fax or any other required information for employee verification. Management." Id. at 23. It listed a phone number and a fax number. Id. The letter was not on letterhead and it was not signed by an individual other than "Management." It provided no further identifying information. Id.

Ms. Clouser needed additional information from the employer, and submitted a victim employment questionnaire directly to the employer. Id. at

3

24 - 25. Ms. Clouser received this form back which reflected that the date of employment was May 8, 2012, job title was massage therapist, it listed that Appellant worked an eight hour day and was paid $35 per hour. Id. at 25. The questionnaire also stated that Appellant had lost time from September 6, 2012, the date after the crime, through November 14, 2012. Id. The questionnaire was signed by Daniel Jacob on November 14, 2012. A phone number was provided. Id.

Ms. Clouser tried to verify Appellant's employment information by first calling the phone number listed on the victim employment questionnaire form filled out by Daniel Jacobs, 215-460-7591. Id. at 26. Ms. Clouser was informed that she had a wrong number. Id. at 27. She went back to the original letter submitted by Appellant with his claim. Id. She was also advised that she had a wrong number. Id.

At the time of filing his claim, Appellant signed a signature page acknowledging the consequences for providing inaccurate information and more specifically, that if he provided fraudulent employment information that would preclude that his from recovering loss wages. Id. at 27 - 28. In addition, once fraud is committed, a claimant becomes ineligible for any compensation. Id. at 29.

At trial, Ms. Clouser testified as to three forms called a review and determination. See, Exhibit "C-6", "C-7" and "C-8". Exhibit C-6 reflected that the total amount paid by the Victim's Compensation Assistance Program to Appellant for loss of earnings was $5,390.00. Id. at 32 - 33. This amount was

4

paid directly to Appellant. Id. at 37. Exhibit C-7 reflected that a payment was made to Philadelphia Hand Center for two visits for a total amount of $1,248.00. Id. at 35. Finally, C-8 reflected that another payment was made to Philadelphia Hand Center for $214.50. Id. at 36. These payments were sent directly to Philadelphia Hand Center. Id. at 37. All checks were cashed. Id. at 38.

Subsequent to these payments, Appellant filed for additional loss of earnings and medical expenses but they were not paid out because red flags on Appellant's claims were starting to pop up. Id. at 36 - 37. Appellant's claim was then sent to a secondary reviewer, who put a halt on Appellant's claim. Id. at 37.

Next to testify at trial was William Anspach, who works for the Commonwealth of Pennsylvania in the Victims Compensation Program. Id. at 49. He is a financial recovery specialist and he also serves as a compliance reviewer for the program. Id. In this capacity he reviews all work done by any of his peers for compliance assurance. Id. at 49 - 50. In particular, Mr. Anspach came to review Appellant's claim in January of 2013. Id. at 50. Appellant's claim came to his attention as a matter of a second review by a second review request, after monies were already paid out and Appellant was looking to be paid again on additional expenses submitted by him. Id. at 51, 52. According to Mr. Anspach there were red flags that drew his attention to Appellant's claim. Id. at 52. For example, Mr. Anspach testified that the initial employer verification documentation was not in the standard format that the policies and procedures of his agency require. Id. at 52. He also noticed that there had been

5

an item that seemed to have been whited out and information written on top of that as it related to the earning that Appellant earned for the last full pay period before the date of the crime. Id. at 54 - 55. In addition, the paystubs attached to Appellant's record seemed out of the ordinary. Id. at 55. They did not seem consistent with what he normally sees, namely there was no company leger and there was only an employer's name and no federal employer identification number. Id. at 56. Mr. Anspach tried to locate the employer and contact number for Muscle Therapy by doing an internet search. Id. at 57, 59. He did not turn up anything and it seemed to be a suspicious claim. Id. at 59. After his findings, Mr. Anspach alerted the claims specialist supervisor. Id. at 59 - 60. After that meeting, if the supervisor agreed with Mr. Anspach's determination the claim would then be forwarded to the legal department for review. Id. at 60.

The Commonwealth next called Denise White to testify at trial. Ms. White works in the Attorney General's Office investigating welfare fraud. Id. at 62. Ms. White testified that Appellant received public assistance, namely food stamps. Id. at 64, 65. Records indicated that food stamps were issued to Appellant going back August of 2011 at his address at 2437 West Allegheny Avenue, Philadelphia, PA. Id. at 65, 66. He received $200.00 a month in benefits from August of 2011 until his file was closed in June of 2013. Id. at 67. In applying for food stamps, an applicant must report their income since the benefit is income based. Id. at 68 - 69. In addition, as part of the application process, an applicant is informed that if there are any changes during the

6

Scanned 05/21/2014

course of receiving the food stamp benefit that applicant must report that income change. Id. at 69. None of the records reflect that Appellant ever reported any income as a massage therapist at any time between August 2011 and June of 2013, whether at Muscle Therapy or at Brown Muscle Therapy. Id. at 70, 71. In fact, Appellant never reported any income at all. Id. at 70. Ms. White also told this Court that if Appellant received money from the Victim's Compensation Assistance Program, he would have been required to report that as well as it would have to be accounted for in determining benefits. Id. at 71 – 72. Appellant never reported the income he received from the Victim's Compensation Assistance Program. Id. at 72.

The third witness to testify on behalf of the Commonwealth was Jennifer Kuruc, director of operations at the Philadelphia Hand Center. Id. at 76 – 77. As part of Ms. Kuruc's responsibilities, she confirmed benefits for patients of the practice. Id. at 78. Appellants' first appointment with the medical practice was on September 27, 2012. Id. at 78. Ms. Kuruc identified Exhibit "C-12" as a portion of Appellant's registration information from the medical practice's computerized system. Id. at 79. On the registration form Appellant provided his address as 2437 West Allegheny Avenue, Philadelphia, PA 19132. Id. at 80. He also indicated that he was self-employed and his company was Brown's Muscle Therapy. Id. Appellant listed his home address as his business address, not 1616 Walnut Street. Id. Appellant also listed his cell phone number as his business phone number. Id. at 81. Although the Victim's Compensation Assistance Program paid for some of the medical services provided by

7

Philadelphia Hand Center, there remained an outstanding balance of $675.00. Id. at 85.

Special Agent Daniel Block was the next to testify at the non-jury trial. Agent Block stated that he worked for the Pennsylvania Office of the Attorney General and that he has done so since October 1, 2012. Id. at 92. Agent Block was assigned to Appellant's case after it was referred to him by the Pennsylvania Office of General Counsel. Id. It was due to suspicions over his application to the Victim's Compensation Assistance Program that it was referred to the agent. Id. at 93. Agent Block testified that Appellant had purported himself to be the victim of an assault which took place on September 5, 2012. Id. at 93. Agent Block had the application with the employer verification and the pay stubs, et cetera. Id. Agent Block attempted to locate Appellant's employer as listed on the application. Id. at 93 – 94. First the agent looked online for any record or reference to the company, which he found nothing. Id. at 94. Next, Agent Block did a labor industry check of the company and taxes paid to the state referenced to the company, which he found none. Id. Then he drove to 1616 Walnut Street in Philadelphia and looked in the building's directory and found nothing there referencing Muscle Therapy or Brown's Muscle Therapy. Id.

Agent Block did speak to Appellant and made a consensual recording the conversation. Id. at 96. At trial, the Commonwealth introduced a copy of the recording as Exhibit "C-14" and played it in it's entirely. Id. at 99.

8

Scan 8 05/21/2015

Agent Block was able to secure an arrest warrant for Appellant. Id. at 100. He went to the 2437 West Allegheny address to arrest Appellant, and when the agent got there Appellant attempted to flee outside his bedroom window. Id. at 101 – 102.

Finally, the Commonwealth and defense counsel stipulated that if Alex Breitmayer, the leasing agent for 1616 Walnut Street, was called to testify he would confirm and testify that between April 2012 and January 1, 2013, there were no tenants at his property under the name of Muscle Therapy or Brown Muscle Therapy. Id. at 109.

The defense presented no witnesses.

At the conclusion of the trial, this Court found Appellant guilty of the aforementioned charges. On January 16, 2015, Appellant was sentenced.

## ISSUES

I.  Whether the evidence was sufficient to support Appellant's conviction of theft by deception in regard to loss earnings.

II.  Whether the evidence was sufficient to support Appellant's conviction of theft by deception in regard to medical expenses.

III.  Whether the evidence was sufficient to support Appellant's conviction of false statements.

IV.  Whether the evidence was sufficient to convict Appellant of tampering with public records.

V.  Whether Appellant's convictions for tampering with public records and forgery do not violate the "specific/general rule".

VI.  Whether Appellant's theft by deception, relating to medical expenses conviction and his false statements conviction were improperly graded.

9

I.    The evidence was sufficient to support Appellant's conviction of theft by deception in regard to loss earnings.

First in Appellant's Concise Statement of Errors Complained of on Appeal, he contends that the evidence was insufficient to show as a matter of law that he was guilty of theft by deception in relation to lost earnings, because the evidence presented by the Commonwealth failed to show beyond a reasonable doubt that Appellant misrepresented his employment status.

Our Superior Court has set forth the following standard of review when the sufficiency of the evidence is challenged:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

Commonwealth v. Nypaver, 69 A.3d 708, 714 - 715 (Pa.Super. 2013) (quoting

10

<u>Commonwealth v. Jones</u>, 886 A.2d 689, 704 (Pa.Super. 2005)).

Section 3922(a)(1) of the Crimes Code is defined as follows:

**§ 3922. Theft by deception**

**(a) Offense defined.**--A person is guilty of theft if he intentionally obtains or withholds property of another by deception. A person deceives if he intentionally:

(1) creates or reinforces a false impression, including false impressions as to law, value, intention or other state of mind; but deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise

18 Pa.C.S.A. § 3922.

In this case, the evidence at trial established that Appellant lied about his employment status on his VCAP application, submitting suspicious paystubs and an employer verification that also seemed suspicious. It was testified to that the paystubs sent up red flags because there was no employer ID number, no employee identification number and no social security number. In addition, the employer letter as well as the employer verification form also sent up red flags. The employer letter was not on letterhead, it was signed by "Management" and the two phone numbers listed on the letter as belonging to the purported employer were wrong numbers. Additionally, it is noteworthy that the pay stubs, the employer letter and employer verification form came from Appellant's fax and not from the purported employer. Further, all attempts to verify the existence of Muscle Therapy could not be verified by Ms. Clouser, Mr. Anspach or Agent Block despite attempts to call the phone

11

numbers listed on the employer letter and the employer verification form, going to the listed address for the employer at 1616 Walnut Street, a stipulation by the leasing agent of 1616 Walnut Street that there was never a company called Muscle Therapy in that building during the relevant time periods and internet searches of various kinds by both Mr. Anspach and Agent Block. Moreover, the employment information he submitted on his VCAP application was different than the information he submitted on his Philadelphia Hand Company patient intake form. Based upon this circumstantial evidence, this Court as the fact-finder concluded that Appellant lied about his employment status on the VCAP forms and submitted fraudulent paperwork to support his claim for lost wages. Therefore, the amount that VCAP paid out to Appellant for these loss wages of $5,395 was the result of his deceptive conduct and was properly found guilty.

II.     The evidence was sufficient to support Appellant's conviction of theft by deception in regard to medical expenses.

Next, Appellant asserts that the evidence was insufficient as a matter of law to find him guilty of theft by deception in relation to medical expenses because any alleged deception had no bearing upon any payments made by VCAP for medical expenses.

Here, Appellant was properly convicted of theft by deception as it relates to the money paid out to Philadelphia Hand Company. At trial Ms. Clouser testified that at the time Appellant filed his claim with VCAP, he was required to acknowledge the consequence of providing fraudulent information

12

during the application process (Trial by Judge 6/30/14 27 – 28). Appellant signed a signature page acknowledging that if fraudulent employer information was provided, he would not be eligible to receive loss wages. Id. at 28. In addition, once fraud is committed, Appellant would be ineligible to receive any compensation. Id. at 29. Because Appellant provided the fraudulent employer information, he was not eligible to receive the medical expenses paid to Philadelphia Hand Company. His compensation for medical expenses were a result of his fraudulent conduct.

III.     The evidence was sufficient to support Appellant's conviction of false statements.

Appellant's third issue on appeal challenges the sufficiency of the evidence to convict him of false statements in receiving food stamps where this Court concluded that the alleged employment was determined to be non-existent. This created conflicting fact determinations that are irreconcilable.

To establish a conviction for false statements, the following must be proved beyond a reasonable doubt:

**§ 481. False statements; investigations; penalty**

(a) Any person who, either prior to, or at the time of, or subsequent to the application for assistance, by means of a wilfully false statement or misrepresentation, or by impersonation or by wilfully failing to disclose a material fact regarding eligibility or other fraudulent means, secures, or attempts to secure, or aids or abets or attempts to aid or abet any person in securing assistance, or Federal food stamps, commits a crime which shall be graded as provided in subsection (b).

62 P.S. § 481(a).

13

In this case, there was no determination that Appellant's employment was non-existent as counsel asserts. Rather, it was determined that Appellant lied in the VCAP application. Whether he did this to either (1) overstate his employment status in order to receive a larger lost wages compensation pay out, or (2) he might have been unemployed. Either way, this Court did not have to make that determination in order to determine that what Appellant did submit to VCAP in support of his lost wages claim was fraudulent as detailed in Issue I, set forth above.

Additionally, from Ms. White's testimony, this Court determined that Appellant failed to disclose the VCAP payments he did receive. Such disclosure would have been used to determine his eligibility for public assistance and would have reduced his $200.00 monthly payment. Appellant failed to disclose this material fact that would have impacted his eligibility in the program..

IV.   The evidence was sufficient to convict Appellant of tampering with public records.

Fourth, Appellant asserts that the evidence was insufficient as a matter of law to convict him tampering with public records because the evidence was based purely upon opinions of lay witnesses that the record was changed.

To find a defendant guilty of tampering with public records under 18 Pa.C.S.A. 4911(a)(2), the following must be proven:

14

**(a) Offense defined.**--A person commits an offense if he:

(1) knowingly makes a false entry in, or false alteration of, any record, document or thing belonging to, or received or kept by, the government for information or record, or required by law to be kept by others for information of the government;

(2) makes, presents or uses any record, document or thing knowing it to be false, and with intent that it be taken as a genuine part of information or records referred to in paragraph (1) of this subsection; or

In this case, Appellant presented falsified documents in his VCAP application. Appellant presented fraudulent pay stubs, a fraudulent employer letter and a fraudulent employer verification form as discussed thoroughly in Issue I set forth earlier in this Opinion. The evidence demonstrated that he knowingly did so in order to receive compensation for lost wages that he was not otherwise entitled to.

V.     Appellant's convictions for tampering with public records and forgery do not violate the "specific/general rule".

Fifth, Appellant contends that this Court erred in finding him guilty of both tampering with public records and forgery because the finding of guilt in special provisions precludes prosecution of the correlating general provision of the penal code.

The "specific/general rule" prohibits prosecution under the general provisions of the penal code when there are applicable special provisions available. Commonwealth v. Tisdale, 100 A.3d 216, 218 (Pa.Super. 2014). (citing

15

Commonwealth v. Brown, 29 A.2d 793, 796-97 (Pa. 1943)). "This same policy remains in force nearly sixty years later and continues to prevent the Commonwealth for pursuing general criminal charges against an individual whose conduct was intended to be punished by a 'specific penal provision' that constitutes the exclusive legal authority for prosecution of the acts charged." Commonwealth v. Leber, 802 A.2d 648, 650 (Pa.Super. 2002).

In this case, the crime of tampering with public records or information and the crime of forgery are intended to punish different behavior, and this is not a case where one crime is general and the other one is specific to which the prohibition the specific/general rule prohibition precludes the Commonwealth from pursuing both charges.

In this case, Appellant was found guilty of tampering with public records under 18 Pa.C.S.A. §4911(a)(2) and of forgery under 18 Pa.C.S.A. §4101(a)(2). Both provisions are set forth below.

### § 4911. Tampering with public records or information

(a) **Offense defined.**--A person commits an offense if he:

(1) knowingly makes a false entry in, or false alteration of, any record, document or thing belonging to, or received or kept by, the government for information or record, or required by law to be kept by others for information of the government;

(2) makes, presents or uses any record, document or thing knowing it to be false, and with intent that it be taken as a genuine part of information or records referred to in paragraph (1) of this subsection; or

16

Scanned 08/05/21/2015

18 Pa.C.S.A. §4911.

## § 4101. Forgery

**(a) Offense defined.**--A person is guilty of forgery if, with intent to defraud or injure anyone, or with knowledge that he is facilitating a fraud or injury to be perpetrated by anyone, the actor:

(1) alters any writing of another without his authority;

(2) makes, completes, executes, authenticates, issues or transfers any writing so that it purports to be the act of another who did not authorize that act, or to have been executed at a time or place or in a numbered sequence other than was in fact the case, or to be a copy of an original when no such original existed; or

18 Pa.C.S.A. § 4101.

The plain language of the tampering with public records as defined by subsection (a)(2) punishes the making, presenting or using a falsified record, meant to be taken as true; whereas forgery under subsection (a)(2) punishes the making, completing, executing, authenticating, issuing or transferring a writing with the *intent to defraud or injure anyone*. This plain language shows that each crime is meant to punish distinct behavior. Under tamping with public records there is no requirement that the criminal behavior was intended to injure anyone; rather, just the act of knowingly falsifying public records is a crime. The element of intent to injury is not necessary.

In the alternative, this Court notes that Section 9303, 42 Pa.C.S.A., allows for, "[n]Notwithstanding the provisions of 1 Pa.C.S. § 1933 (relating to particular controls general) or any other statute to the contrary, where the same

17

conduct of a defendant violates more than one criminal statute, the defendant may be prosecuted under all available statutory criminal provisions without regard to the generality or specificity of the statutes." 42 Pa.C.S.A. § 9303; see also, In re N.W. 6 A.3d 1020, 1026 (Pa.Super. 2010).

VI. Appellant's theft by deception, relating to medical expenses conviction and his false statements conviction were improperly graded.

In Appellant's sixth and seventh issues on appeal, he asserts that his conviction for theft by deception, relating to medical expenses was improperly graded as a third degree felony when the alleged cost of services did not exceed $2,000.00 and that this Court erred in grading the fraud or false statements in receiving food stamps/public assistance as a first degree felony when the alleged value of the assistance did not exceed $3,000.

Although this Court notes that Appellant was not sentenced for his welfare fraud conviction as a first degree felony, but rather as a felony of the third degree. See, Sentencing Guidelines Sheet and (Sentencing 1/16/15 pp. 3, 21); grading is admittedly improper on both of these convictions.

In regard to Appellant's theft by deception, relating to medical expenses conviction, he was found guilty of theft in the amount of $1,462.00. The theft charge, Count II, was graded as a third degree felony in the bill of information, despite that the amount of the theft was listed as $1,462.00. In addition, this theft conviction was graded in the sentencing guidelines sheet as a third degree felony. Appellant was ultimately sentenced to a term of 6 to 23 months' imprisonment, followed by a three year term of probation. (Sentencing

18

1/16/15 p. 20). This conviction should have been graded as a first degree misdemeanor. See, 204 Pa. Code §303.15.

In regard to Appellant's conviction for welfare fraud, it was graded as a third degree felony in Count IV of the bills of information and it was also set forth as a third degree felony in the sentencing guidelines sheet. There was no finding as to the dollar amount regarding the fraud. However, the evidence adduced at trial showed that the amount was not equal to or more than $3,000.00 so as to make this a third degree felony. Rather the evidence adduced at trial showed the fraud was a first degree misdemeanor, i.e., between $1,500.00 to $2,999.00.

Our Pennsylvania Supreme Court in Commonwealth v. Spruill, 80 A.3d 453 (Pa. 2013), held that an error in grading an offense concerns the underlying conviction rather than the legality of the sentence, and is therefore subject to waiver. In our case, the admitted errors in grading go to the conviction and not to the legality of sentence. Therefore, Appellant should have objected to this Court's consideration of that offense or to the conviction immediately following this Court's guilty verdict. Commonwealth v. Shamsud-Din, 995 A.2d 1224 (holding that an appellant failed to preserve for appellate review a claim that the trial court erred by convicting her of third-degree misdemeanor assault where appellant did not timely object to the trial court's consideration of that offense or to conviction immediately following the court's guilty verdict.); see also, Commonwealth v. Spruill, 105 A.3d 802 (Pa.Super., July 28, 2014) (memorandum opinion).

19

Scan 0 @ 05/21/2015

## CONCLUSION

Based on the forgoing analysis, the judgment of sentence entered on January 16, 2015, should be affirmed.

BY THE COURT:

_____
WILLIAM R. CARPENTER       J.
COURT OF COMMON PLEAS
MONTGOMERY COUNTY
PENNSYLVANIA
38TH JUDICIAL DISTRICT

**Copies sent on May 8, 2015**

**By Interoffice Mail to:**

Court Administration

**By First Class Mail to:**

Michael Doyle, Esquire

20