J-A05032-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KENYATTA KNUCKLES, | |
| Appellant | No. 569 EDA 2015 |

Appeal from the Judgment of Sentence December 22, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0015417-2013

BEFORE: OLSON, J., OTT, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:              **FILED APRIL 15, 2016**

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County following Appellant's conviction at a non-jury trial of possession with the intent to deliver a controlled substance (crack cocaine) and possession of a controlled substance (crack cocaine).[1] Appellant argues (1) the trial judge's verdict is against the weight of the evidence; (2) the trial court erred in denying Appellant's oral motion for extraordinary relief based on the Commonwealth's failure to disclose material, exculpatory evidence in violation of **Brady v. Maryland**, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); and (3) Appellant's convictions should have merged for sentencing purposes. We affirm.

---

[1] 35 P.S. §§ 780-113(a)(30) and (a)(16), respectively.

*Former Justice specially assigned to the Superior Court.

The relevant facts and procedural history have been aptly set forth in the trial court's opinion, in relevant part, as follows:

[Appellant] was arrested and. . . charged with [one count of] Possession with Intent to Deliver ("PWID") and [one count of] Knowing and Intelligent Possession ("[simple possession]").[2]

[Counsel was appointed and a] waiver trial was conducted before th[e] [trial] court on October 23, 2014. At the conclusion of trial, [Appellant] was found guilty of both charges. Viewing the evidence in the light most favorable to the Commonwealth[,] as verdict winner, the following facts were proved at trial: On October 23, 2013, Philadelphia Police Officer Thomas Clarke oversaw the use of a confidential informant ("CI") to purchase narcotics at 3154 E Street. Police Officer Regino Fernandez assisted as back-up.

The officers met with the CI to conduct a controlled buy from [Appellant] at 3154 E Street. Officer Clarke testified that on October 23, 2013, he searched the CI and he was negative for any money, narcotics, or contraband. The CI was then given prerecorded buy money. (N.T., 10/23/14, p. 11). The CI knocked on the front door of 3154 E Street and [Appellant] answered. After a brief conversation, the CI entered the house. A short time later[,] the CI emerged with [Appellant], they shook hands, and the CI immediately returned to Officer Clark[e] who was parked on the east side looking over to the property. Officer Clark[e] recovered four (4) Ziploc packets stamped with an eight ball symbol, filled with a white-chunky substance from the CI. Officers Clark[e] and Fernandez returned to headquarters where Officer Fernandez conducted a NIK test E on one of the packets; it tested positive for cocaine. (N.T., 10/23/14, pp. 11-13). At trial, Officer Fernandez identified [Appellant] as the man who opened the door at 3154 E Street for the CI. (N.T., 10/23/14, pp. 46-48).

On November 12, 2013, Officers Clarke and Fernandez returned to 3154 E Street to conduct another controlled buy. Using the same CI as was used on October 23, 2013, Officer

_____

[2] Appellant was also charged with one count of possession of marijuana, 35 P.S. § 780-113(a)(31); however, the trial court acquitted Appellant on this charge.

Clarke searched the CI and he was given prerecorded buy money. The CI then approached [Appellant] and two other black males on the porch of 3154 E Street. After a brief conversation between [Appellant] and the CI, [Appellant] entered the house, came back out a short time later and placed something in the CI's open palm. The CI then handed over the prerecorded buy money. (N.T., 10/23/14, pp. 13-14). The CI left [Appellant] and was immediately picked up by Officer Clarke. The CI again turned over four (4) Ziploc packets stamped with the eight ball symbol. Officer Fernandez conducted a NIK test G on one of the packets; it tested positive for cocaine. (N.T., 10/23/14, pp. 14-15).

On November 18, 2013, Officers Clarke and Fernandez returned to 3154 E Street to conduct another controlled buy. The same CI and pre-buy procedure was used for the third surveillance. The CI approached 3154 E Street and spoke to a woman at the door who pointed to the other side of the street. Officer Clarke observed the CI meet with a man who was standing on the 600 block of Wishart Street. After a brief conversation, the man was observed walking to an abandoned house on the south side of the street, pulling back damaged siding underneath a boarded up window, grabbing an object, and removing something from it. The man returned to the CI, and an exchange was made with the prerecorded buy money. (N.T., 10/23/14, pp. 15-16). The CI immediately returned to Officer Clark[e] and handed him four (4) Ziploc packets. The four (4) Ziploc packets, stamped with the eight ball symbol, matched the packets from the previous two buys and also tested positive for cocaine. (N.T., 10/23/14, pp. 16-17). Officer Fernandez testified that the CI informed him that the seller on November 18, 2013[,] was not [Appellant]. The CI described that seller as a "medium build black man." The CI informed Officer Fernandez that this seller was selling for "the other guy." (N.T., 10/23/14, p. 41).

In the interim, on November 13, 2013, Police Officer Louis Hardy was conducting his own surveillance of 3154 E Street and using a different CI to purchase narcotics at 3154 E Street. On this date, Officer Hardy testified that [Appellant] sold his CI four (4) Ziploc packets with "black markings on them," containing a white-chunky substance; the CI purchased narcotics from

[Appellant] on two separate occasions.[3] On each occasion, these packets tested positive for cocaine. Neither Officer Hardy, [ ] Officer Fernandez[,] [n]or Officer Clarke were aware of the other's investigation. Officer Hardy's CI said that the seller's name was "Tone" and provided Officer Hardy with the seller's telephone number. Officer Hardy did not investigate the phone number, nor did he compare that phone number with [Appellant's] phone number. Officer Hardy identified the November 13, 2013[,] seller as [Appellant] in the courtroom. These were the only two occasions Officer Hardy saw [Appellant]. (N.T., 10/23/14, pp. 26-30). Officer Fernandez testified that Officer Hardy contacted him on November 13, 2013[,] about the surveillance and controlled buy he and Officer Clarke had conducted. Officer Hardy turned the narcotics bought by his CI on November 13, 2013[,] over to Officer Fernandez. (N.T., 10/23/14, pp. 32-33).

On November 20, 2013, Officers Clarke and Fernandez returned to 3154 E Street with a search warrant that was prepared by Officer Fernandez based on the surveillance conducted by himself, Officer Clarke, and Officer Hardy. Officer Clarke testified that when they arrived at the address, [Appellant] was by himself on the attached porch of his neighbor's house at 3152 E Street. [Appellant] was observed continuously "fumbling through the trashcan." Back-up units were notified of [Appellant's] location and when they arrived, [Appellant] ran off. He was arrested on the 600 block of Wishart Street. Inside the trashcan that [Appellant] was observed "fumbling around in" was a potato chip bag containing 15 clear jars of marijuana. (N.T., 10/23/14, pp. 17-20). Officer Fernandez testified that when the search warrant was executed, they did not find any prerecorded buy money, narcotics, or any proof that [Appellant] lived at 3154 E Street[.] (N.T., 10/23/14, p. 44).

[Appellant] was found guilty of [PWID] and simple possession related to the sales made on October 23rd, November 12th, and November 13th. [Appellant] was found not guilty of. . . the November 18th controlled buy, as well as the possession charge from November 20th. (N.T., 10/23/14, pp. 63-64).

---

[3] The CI used by Officer Hardy was not the same CI that Officer Fernandez and Officer Clarke used during their surveillance.

[Appellant proceeded to a sentencing hearing on December 22, 2014.] [Prior to] sentencing, defense council [*sic*] [made] a motion for extraordinary relief asking for a new trial. Council [*sic*] argued that Officer Hardy had previously misidentified a suspect in another case in April, 2014, and the Commonwealth failed to disclose that information to the defense. Furthermore, the defense argued that the Commonwealth's failure to disclose this misidentification was a **_Brady_** violation requiring a new trial. [Appellant's] motion was denied. (N.T., 12/22/14, pp. 3-6, 10).

Trial Court Opinion, filed 8/7/15, at 1-5 (footnotes added and omitted) (footnotes in original).

At the conclusion of the hearing, the trial court sentenced Appellant to one year to two years in prison for PWID and two years of reporting probation for simple possession, the sentences to run concurrently. Appellant filed a timely, counseled post-sentence motion, which the trial court denied by order entered on January 28, 2015. This timely appeal followed, and all Pa.R.A.P. 1925 requirements have been met.

Appellant's first contention is the trial judge's verdict is against the weight of the evidence.[4] Specifically, he avers the police officers' testimony identifying him as the person from whom the CIs bought crack cocaine on October 23, November 12, and November 13, 2013, was vague, contradictory, and unreliable. Further, he notes that the officers' identification testimony was undermined by the fact that, when Appellant's person was searched incident to his arrest on November 20, 2013, the police

---

[4] Appellant preserved this issue in his post-sentence motion, as well as in his Pa.R.A.P. 1925(b) statement. **_See_** Pa.R.Crim.P. 607; Pa.R.A.P. 1925.

- 5 -

found no narcotics on Appellant's person. Further, Appellant notes that when the house at 3154 E Street was searched on November 20, 2013, the police found no narcotics, money, drug paraphernalia, or evidence linking Appellant to the house.

> A claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence. It is well settled that the [fact-finder] is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the . . . verdict is so contrary to the evidence that it shocks one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

*Commonwealth v. Houser*, 610 Pa. 264, 276, 18 A.3d 1128, 1135-36 (2011) (citations and quotation marks omitted). In reviewing a weight of the evidence claim, "[a]n appellate court cannot substitute its judgment for that of the finder of fact." *Commonwealth v. Small*, 559 Pa. 423, 435, 741 A.2d 666, 672-73 (1999).

In its opinion, in addressing Appellant's weight of the evidence claim, the trial court acknowledged there were inconsistencies presented in the officers' testimony; however, the trial court indicated it found credible the officers' trial testimony identifying Appellant as the person who sold drugs to the CIs on October 23, November 12, and November 13, 2013. *See* Trial Court Opinion filed 8/7/15 at 6-7. Based on the fact three police officers,

- 6 -

who viewed Appellant on numerous occasions, positively identified Appellant as the person they observed engage in transactions with their respective CI, we find no abuse of discretion. **See Houser**, **supra**.

Further, as to Appellant's suggestion the verdict is against the weight of the evidence since there was a lack of contraband discovered by the police when they searched the house at 3154 E Street, as well as Appellant's person incident to his arrest, we note that these searches occurred on November 20, 2013, a week after the police last utilized a CI in a controlled buy with Appellant. Given the lapse in time, as well as the fact the evidence tended to show Appellant varied his drug dealing habits to avoid detection, we find no abuse of discretion in the trial court's rejection of Appellant's weight of the evidence claim. **See id.**

Appellant's next contention is the trial court erred in denying his oral motion for extraordinary relief[5] based on the Commonwealth's failure to disclose material, exculpatory evidence in violation of **Brady**. Specifically, Appellant avers the Commonwealth violated **Brady** by failing to disclose to the defense that, in an unrelated narcotics case, Officer Hardy misidentified a suspect while under oath.[6] Appellant contends this evidence is material

---

[5] Pa.R.Crim.P. 704(B) permits a trial judge to hear an oral motion for extraordinary relief prior to sentencing. In the case *sub judice*, Appellant made the instant oral motion prior to sentencing. N.T., 12/22/14, at 3-10.
[6] In arguing his motion, Appellant's counsel asserted that, subsequent to trial, he "learned through a colleague" that Officer Hardy had misidentified a
*(Footnote Continued Next Page)*

- 7 -

since it "bore directly on [Appellant's] chosen defense[,]" *i.e.*, that the police in this case misidentified Appellant as the perpetrator. Appellant's Brief at 20. He alleges "[t]he fact that, on a previous occasion, Officer Hardy could not tell the difference between two defendants whose only similarity was their height and complexion would have discredited his instant identification of [Appellant] and bolstered [Appellant's] chosen defense." Appellant's Brief at 21. He further alleges that "[t]he evidence of Officer Hardy's prior misidentification would have seriously jeopardized an already shaky conviction by further undermining the link between the observed drug sales and [Appellant]." *Id.* at 22. Appellant avers the Commonwealth's failure to disclose this "invaluable impeachment evidence" requires a new trial. We disagree.

> The law governing alleged ***Brady*** violations is well-settled. In ***Brady***, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an

*(Footnote Continued)* _____

defendant in an unrelated case. N.T., 12/22/14, at 5-6. On appeal, Appellant points to, and provides the preliminary notes of testimony for, the unrelated case of ***Commonwealth v. Felder***, 51 CR 00028942014. In ***Felder***, at an initial preliminary hearing, Officer Hardy identified the man he observed selling drugs as "the defendant with the blue and white striped shirt." N.T., 3/26/14, at 5. However, at the conclusion of the hearing, the public defender informed the court that the man seated at the defense table, who Officer Hardy identified as the suspect, was not, in fact, Mr. Felder. ***Id.*** at 19. The public defender noted that an incorrect defendant, Durrell Smith, had mistakenly sat at the defense table for Mr. Felder's preliminary hearing, and Officer Hardy had misidentified Mr. Smith as being Mr. Felder. ***Id.*** At Mr. Felder's second preliminary hearing, Officer Hardy admitted he had previously identified a different man as being the suspect in the Felder case. N.T., 4/10/14, at 17-18. Ultimately, Mr. Felder's case was dismissed.

accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." ***Brady***, 373 U.S. at 87, 83 S.Ct. at 1196–97. The Supreme Court subsequently held that the duty to disclose such evidence is applicable even if there has been no request by the accused, ***United States v. Agurs***, 427 U.S. 97, 107, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976), and that the duty may encompass impeachment evidence as well as directly exculpatory evidence, ***United States v. Bagley***, 473 U.S. 667, 676–77, 105 S.Ct. 3375, 3380–81, 87 L.Ed.2d 481 (1985). Furthermore, the prosecution's ***Brady*** obligation extends to exculpatory evidence in the files of police agencies of the same government bringing the prosecution. ***Kyles v. Whitley***, 514 U.S. 419, 438, 115 S.Ct. 1555, 1568, 131 L.Ed.2d 490 (1995); ***Commonwealth v. Burke***, 566 Pa. 402, 781 A.2d 1136, 1142 (2001).

On the question of materiality, the Court has noted that "[s]uch evidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" ***Strickler v. Greene***, 527 U.S. 263, 280, 119 S.Ct. 1936, 1948, 144 L.Ed.2d 286 (1999) (quoting ***Bagley***, 473 U.S. at 682, 105 S.Ct. at 3383). The materiality inquiry is not just a matter of determining whether, after discounting the inculpatory evidence in light of the undisclosed evidence, the remaining evidence is sufficient to support the [fact finder's] conclusions. "Rather, the question is whether 'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" ***Strickler***, 527 U.S. at 290, 119 S.Ct. at 1952. "Thus, there are three necessary components that demonstrate a violation of the Brady strictures: the evidence was favorable to the accused, either because it is exculpatory or because it impeaches; the evidence was suppressed by the prosecution, either willfully or inadvertently; and prejudice ensued." ***Burke***, 781 A.2d at 1141.

Importantly, the Court has noted that the duty imposed upon the prosecution under ***Brady*** is a limited one. ***See***, *e.g.*, ***Weatherford v. Bursey***, 429 U.S. 545, 559, 97 S.Ct. 837, 846, 51 L.Ed.2d 30 (1977) ("[t]here is no general constitutional right to discovery in a criminal case, and ***Brady*** did not create one"). This Court has also recognized ***Brady's*** limited requirements, and has noted that ***Brady*** does not grant a criminal defendant unfettered access to the Commonwealth's files. ***See Commonwealth v. Edmiston***, 578 Pa. 284, 851 A.2d 883, 887

- 9 -

n.3 (2004) (defendant has no general right under the Constitution or **Brady** to search Commonwealth files)[.]

**Commonwealth v. Lambert**, 584 Pa. 461, 470-71, 884 A.2d 848, 853-54 (2005) (citations omitted). Moreover, there is no **Brady** violation when the defense has equal access to the allegedly withheld evidence. **See Commonwealth v. Spotz**, 587 Pa. 1, 97, 896 A.2d 1191, 1248 (2006) ("It is well established that no **Brady** violation occurs where the parties had equal access to the information or if the defendant knew or could have uncovered such evidence with reasonable diligence[ ]" (internal citation omitted)).

In explaining the reasons it found no **Brady** violation, and accordingly denied Appellant's oral motion for extraordinary relief, the trial court noted the following:

> The misidentification made by Officer Hardy in another unrelated case is not what this case rests on; the finding of guilt is based on the evidence collected by all three Officers involved in this case. Even if the Defense was [made] aware [in this case] of Officer Hardy's misidentification from a prior case, that still would not have changed the fact that the Ziploc bags that he retrieved from his surveillance operations of [Appellant] matched the Ziploc bags retrieved by Officer Clarke who was in charge of a separate surveillance. Officers Clarke and Fernandez witnessed [Appellant] sell those bags to their CI on several different occasions [and they positively identified him at trial].
> Moreover, there is no **Brady** violation because the Defense could have discovered this information through their own reasonable due diligence. The Defense handled the preliminary hearing where Officer Hardy's misidentification was discovered; they therefore had the same opportunity and access to that information as the Commonwealth did. It is also not the Commonwealth's duty or responsibility to know every detail and nuance from prior [unrelated] cases. Nor are they obligated to

research other unrelated matters on the chance that an officer involved in their case may or may not have misidentified someone in the past.  Therefore, because [Appellant] had equal access to Officer Hardy's [prior, unrelated] misidentification through reasonable due diligence, and the fact that the contraband retrieved by Officer Hardy matched what was recovered by Officer Clarke, there was no *Brady* violation[.]

Trial Court Opinion, filed 8/7/15, at 8-9.

We conclude the trial court did not err in finding the Commonwealth did not violate *Brady*, and thus, the trial court properly denied Appellant's motion for extraordinary relief.

Appellant's final contention is that his convictions for PWID and simple possession should have merged for sentencing purposes.

This Court has previously determined:

A claim that the trial court imposed an illegal sentence by failing to merge sentences is a question of law. Accordingly, our standard of review is plenary. The merger doctrine is essentially a rule of statutory construction designed to determine whether the legislature intended for the punishment of one offense to encompass that for another offense arising from the same criminal act or transaction. The Supreme Court h[as] held [that] in all criminal cases, the same facts may support multiple convictions and separate sentences for each conviction except in cases where the offenses are greater and lesser included offenses.  The Supreme Court further defines 'the same facts' as follows:
    any act or acts which the accused has performed and any intent which the accused has manifested, regardless of whether these acts and intents are part of one criminal plan, scheme, transaction or encounter, or multiple criminal plans, schemes, transactions or encounters.

***Commonwealth v. Williams***, 958 A.2d 522, 527 (Pa.Super. 2008) (internal citations and some quotations omitted).  Further, "[n]o crimes shall

- 11 -

merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense." ***Commonwealth v. Spruill***, 622 Pa. 299, 304, 80 A.3d 453, 456 (2013) (citing 42 Pa.C.S.A. § 9765). "If the offenses stem from two different criminal acts, merger. . .is not required." ***Williams***, 958 A.2d at 527 (citation omitted).

In the case *sub judice*, the Commonwealth proved beyond a reasonable doubt that Appellant engaged in four separate transactions of crack cocaine: one on October 23, 2013, one on November 12, 2013, and two on November 13, 2013. Moreover, Appellant sold crack cocaine to two separate CIs, who were involved in separate police investigations (*i.e.*, Appellant sold crack cocaine to the CI used by Officers Clarke and Fernandez on October 23, 2013, and November 12, 2013, whereas Appellant sold crack cocaine to the CI used by Officer Hardy twice on November 13, 2013).

Based on the aforementioned, we find the evidence supports the conclusion that Appellant's conviction on one count of PWID and his conviction on one count of simple possession do not merge since the crimes did not arise from a single criminal act. ***See Williams***, ***supra***.

For all of the foregoing reasons, we affirm.

Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>4/15/2016</u>